**Curtis Sherman GOAD, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 43433.**

Court of Criminal Appeals of Texas.

Feb. 17, 1971.

Rehearing Denied March 24, 1971.

Charles Scarbrough, Abilene, for appellant.

Ed Paynter, Dist. Atty., Abilene, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for murder where the punishment was assessed at 65 years.

The sufficiency of the evidence is not challenged. Suffice it to say the record reflects that the deceased, Byron Richardson, was City Marshal of Cross Plains, Texas, and that during the early morning hours of July 2, 1969, he encountered the appellant and his wife. The deceased pulled up behind appellant's pickup truck and issued to the appellant, who had been drinking heavily, a warning ticket for failure to have a valid Texas driver's license.

At this point the appellant claimed the deceased offered to be lenient if the appellant would "fix him up" with his wife and that when the deceased placed his hand on appellant's wife the appellant got a .22 caliber rifle out of the truck and shot the deceased. The deceased got some shots off and hit the appellant in the hand and followed the appellant, who left hurriedly in his truck, for approximately three blocks until he (the deceased) lost control of his vehicle and ran up in the yard of a house.

The appellant threw the .22 caliber rifle into a field and drove to a friend's house where he sttaed he shot himself accidentally while rabbit hunting. He was later arrested in Cisco where he explained he had cut his hand.

The deceased remained in a hospital in Abilene for approximately a month until he succumbed as a result of the gunshot wounds he suffered at the hands of the appellant.

Appellant's initial ground of error reads:

"The appellant was denied a trial by a fair and impartial jury as the State used the statute providing for challenges for cause for concientious objections to the death penalty when the State was not seriously seeking the death sentence."

Sometime prior to trial the District Attorney filed a written notice as required by Article 1.14, Vernon's Ann.C.C.P., that the State was seeking the death penalty. During the voir dire examination of the jury panel he exercised 21 challenges for cause under the provisions of Article 35.-16(b) (1), V.A.C.C.P. Appellant contends the prosecution was thus accorded 21 additional challenges for cause which would not have been available to the State if the written notice had not been filed, and the District Attorney was not serious about securing the death penalty. He bottoms this claim upon the fact that the District Attorney accepted as jurors several individuals who indicated they could not assess the extreme punishment or who were not qualified at all on the death penalty, and thereafter continued to exercise challenges for cause based on Article 35.16(b) (1) supra, when the State could not have had a reasonable expectation of securing the maximum punishment for murder.

The appellant points out that since the advent of the 1965 Code of Criminal Procedure *only* the State has the right to challenge for cause a person who has conscientious scruples against the infliction of death as a punishment for crime. Cf. Taylor v. State, 131 Tex.Cr.R. 350, 99 S.W.2d 609. He claims this gave the State an unfair advantage in the selection of the jury.

■ Appellant does not rely upon the systematic exclusion of certain jurors because "they did not believe in the death penalty" in view of the holding in Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797, that Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776, has no application where the death penalty is not assessed. He appears to claim that the jury selection methods utilized resulted in a prosecution prone jury on the issue of guilt. No evidence to support the claim that a jury selected in this manner is necessarily prosecution prone was offered. Therefore, on the basis of what this court said in Parks v. State, 437 S.W.2d 554, we cannot agree. See also Woodard v. State, Tex.Cr.App., 463 S.W.2d 197 (this day decided). And we do not agree that evidence of bad faith is indicated solely because the District At-

torney accepted as jurors individuals who opposed the death penalty after filing a written notice to seek the death penalty.

Ground of error #1 is overruled.

Next, appellant contends he was denied a fair and impartial jury since the jury panel was selected by jury commissioners and did not represent "a fair and impartial cross section of the citizens" of the county of prosecution.

No motion to quash the jury panel was filed and there is nothing to indicate any irregularities in the selection of the jury panel or that panel did not represent a fair and impartial cross section of the citizens of the county. This court can take judicial notice that Callahan County is a "jury commissioner" county (see Williams v. State, Tex.Cr.App., 214 S.W.2d 622) and that the selection of jury panels in the district court of such county is governed by Article 33.09, V.A.C. C.P., and Articles 2104–2107, Vernon's Ann.Civ.St.

The authorities cited by appellant do not hold that failure to select a jury panel from a jury wheel denies an accused his constitutional right to a fair and impartial trial.

We overrule his second ground of error. See Bradley v. State, Tex.Cr.App., 450 S.W.2d 847.

Testifying for the State, Doyle Burchfield, Mayor of Cross Plains, Texas, related that on the date of the alleged offense the deceased was the duly appointed and acting City Marshal of Cross Plains. On direct examination, without objection, he testified the deceased was a satisfactory officer. Subsequently, the witness was recalled by the appellant out of the jury's presence and asked if he knew the deceased's reputation was that of a "girl chaser." The witness was also asked if he knew of several incidents in which the deceased, while acting as City Marshal, had propositioned several women for sexual intercourse and had severely beaten some boys in an attempt to secure a confession. The witness denied knowing of any such reputation, incidents, or rumors and stated his opinion would still be that the deceased was a satisfactory officer. The appellant sought to present this testimony before the jury but the court refused to permit the same.

The appellant complains of such action of the court contending the State "opened the door" by the question on direct examination and he should have been allowed the opportunity to attempt to impeach the witness Burchfield in the manner indicated. He relies upon Arthur v. State, 170 Tex. Cr.R. 161, 339 S.W.2d 538. There, over objection, the State was permitted to introduce evidence that the reputation of the deceased for being a peaceable and inoffensive person was good. In Arthur the court noted the well established rule that it is never competent for the State in the first instance to prove the person slain was peaceable and inoffensive unless the opposite has been offered by the defense or when the accused seeks to justify the homicide on the grounds of threats made by the deceased. See Article 1258, Vernon's Ann.P.C.

Such is not the case at bar. Assuming the attempted impeachment was not on a collateral matter, the assertion of a fact or the "Did you know" type questions put to the witness were not permissible, and the court did not err in permitting the same to go before the jury.

Next, appellant complains of the admission into evidence of a statement by the deceased to a Justice of the Peace as res gestae.

Following the shooting incident the deceased drove his car approximately three blocks before it came to a stop in a Mr. McKeehan's yard. Deputy Sheriff Cox, summoned by radio, arrived three or four minutes later. The deceased was described as having wounds in his arm and stomach. Ten to fifteen minutes later Justice of

the Peace McMillan arrived, the deceased was placed in an ambulance and the vehicle started to the hospital. It was at this time the complained of statement was made.

Judge McMillan described the blood coming out of the deceased's stomach as "a little artesian well or something," and described the deceased as being "hit pretty hard," "hurting pretty bad," and "sweating a lot" and making noises when he was touched or moved.

Over objection, McMillan testified:

"A. We started out on the Coleman Road, and I asked him what happened. And he said—I asked him if he knew who done this; and he said, yes, he did. And I said 'Who?' And he said, 'Goad and his wife, the ones we talked to at the fire cracker stand.' So I asked him why, and he asked, 'I don't know. I give him every break in the world. He was DWI, and I gave him a warning ticket.' And I asked him, then, if there was, you know, any reason; and he said 'No. The little son of a bitch is wanted somewhere.' That is the very words he said."

Upon further objection as to the last statement the court sustained the objection and instructed the jury to disregard the last statement. No further relief was requested.

■ As to the balance of the statement we conclude that the same was admissible as part of the res gestae. The fact that the deceased's statement was in response to non-leading questions and the fact he had briefly spoken to Mr. McKeehan and Deputy Cox does not, in our opinion, under the circumstance presented call for a different conclusion.

In James v. State, 170 Tex.Cr.R. 402, 341 S.W.2d 436, it was held that the statements of the deceased on the way to the hospital, after she had regained consciousness about one hour after her fatal in-

jury, showing that the defendant had deliberately run her down in a car, were admissible, even though made in response to questions in view of the deceased's extreme physical suffering and lack of calmness at the time the statements were made.

We further observe that the bulk of the admitted statement was supported by other evidence properly admitted.

Still further, appellant complains the court erred in permitting the State to improperly impeach him. Prior to trial the court granted appellant's motion in limine to instruct the State to limit its inquiry to final convictions for felony and misdemeanors involving moral turpitude if his reputation was put into issue.

■ On cross-examination of the appellant at the guilt stage of the trial the special prosecutor inquired if appellant had not been convicted of burglary in Ft. Worth in 1964. Appellant's objection, which was overruled, was merely that the same was not admissible under Article 38.29, V.A.C.C.P., and the appellant then answered, "I was placed on probation for burglary." The foregoing statute prohibits the use of a criminal charge unless the same has resulted in a final conviction except where a suspended sentence has been given and not set aside or probation granted and the period of probation has not expired. Rayford v. State, Tex.Cr. App., 423 S.W.2d 300. Certainly a prosecutor cannot in good faith inquire about a prior conviction for impeachment purposes if he knows that probation has been granted and the period of probation has expired. There is nothing in this record, however, to show the period of probation, or the fact that it had expired or that the prosecutor was aware of such expiration. Further, the objection did not direct the court's attention to any claim that probation had been granted and the probationary period had expired. We perceive no error. Cf. Smith v. State, Tex.Cr.App., 409 S.W. 2d 409.

**134**

Further, the transcription of the court reporter's notes of the penalty stage of the trial at which appellant's "prior criminal record" would have become admissible under the provisions of Article 37.07, V.A.C.C.P., is not in the record before us, and furnishes no aid in determining the expiration date of the probation granted. Cf. Valley v. State, Tex.Cr.App., 448 S.W.2d 474.

 Appellant contends the trial court erred in refusing to admit photographs marked for identification as Defense Exhibit Nos. 22, 23, 24 and 25, "after they had been properly verified." The photographs supposedly depicted the positions of "various parties immediately prior to the shooting," according to the appellant's wife, Sherri Goad. She identified the pickup truck in the photos as the vehicle she was in on the night of the shooting and stated the positions of the people were correct in portraying the proximity of the various people involved. She acknowledged that the posed photographs taken some eight days prior to trial revealed her dressed entirely different than she was attired on the night in question, and that one of the defense counsel posed as the deceased at a location different than that where the alleged offense took place. The State objected on the ground that such photos only served to bolster the witness Sherri Goad's earlier testimony which was undisputed. Since the introduction of such photographic evidence was within the sound discretion of the trial court, we perceive no error.

Appellant also complains he was denied a fair and impartial trial because of the inflammatory and prejudicial jury argument made by the special prosecutor.

In a single ground of error appellant combines at least eight examples of improper argument. The same clearly does not comply with the provisions of Article 40.09, Sec. 9, V.A.C.C.P., and nothing is presented for review.

Nevertheless, we have carefully examined the argument complained of and find no objection to any of such argument with one exception. There the appellant's counsel contended the special prosecutor was outside the record and the court admonished him to "stay in the record." No further relief in the form of a jury instruction or a motion for mistrial was requested. Appellant is in no position to complain on appeal. Kitchen v. State, Tex.Cr.App., 437 S.W.2d 867.

Finding no reversible error, the judgment is affirmed.