**Archie T. VAN SICKLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 57009.**

Court of Criminal Appeals of Texas, Panel No. 1.

June 27, 1979.

On Rehearing Sept. 10, 1980.

Van A. Hutchins, on appeal only, Alamo, for appellant.

Charles R. Borchers, Dist. Atty., Donato D. Ramos, First Dist. Atty., Sharon S. Trigo and Alonzo Z. Laurel, Jr., Asst. Dist. Attys., Laredo, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

## OPINION

ROBERTS, Judge.

A jury found the appellant guilty of theft of property and it assessed his punishment at two years' confinement and a fine of $2,000. The State's case consisted of circumstantial evidence, the chief circumstance being the presence in the appellant's apartment of 16 pieces of stolen furniture. The appellant's explanation of this circumstance was that, with the cooperation of his roommate, he bought the furniture from a third person. According to the appellant, his roommate acted as intermediary by taking the appellant's payment to the third person and bringing back a receipt. When

the appellant's counsel tried to elicit from the appellant the details of the arrangement, the State objected to "obtaining testimony from a receipt that has not been admitted in evidence." The appellant then offered the receipt as evidence. The State objected on the ground that the roommate was "available to verify the authenticity of that very exhibit." (In fact, the roommate was a co–indictee who had agreed to testify for the State in return for a dismissal of the charge against him. He denied knowledge of the receipt.) The trial court sustained the objection; this was error.

The appellant's *"intent* to deprive the owner of property" was an essential element of the offense. V.T.C.A., Penal Code, Section 31.03(a). By this indictment, the State also was required to prove that the appellant *"knowingly* and unlawfully appropriate[d] property . . . without the effective consent of . . . the owner. . . ." If the roommate gave the appellant the receipt, whether "authentic" or not, it would be relevant to the issues of the appellant's mental states. *Long v. State*, 1 Tex.Ct.App. 466 (1876); see *Goens v. State*, 35 Tex.Cr.R. 73, 31 S.W. 656 (1895). That the roommate might (and later did) deny giving the appellant the receipt would create only a factual question of the weight to be given the evidence; it would not render the evidence inadmissible. Because the evidence of guilt was not overwhelming, we cannot say that the error in excluding this evidence was harmless.

The judgment is reversed and the cause is remanded.

Before the court en banc.

## OPINION ON STATE'S MOTION
## FOR REHEARING

DALLY, Chief Judge.

The State in its motion for rehearing correctly points out that the error for which the judgment was reversed was not a ground of error urged by the appellant in his brief on appeal filed in the trial court. Art. 40.09, V.A.C.C.P. Art. 40.09, Sec. 13, V.A.C.C.P., provides that the Court of

Criminal Appeals shall review ". . . all grounds of error and arguments in support thereof urged in defendant's brief in the trial court . . . as well as any unassigned error which in the opinion of the Court of Criminal Appeals should be reviewed in the interest of justice."

The State asserts in this instance the error, if any, is concerned only with a ruling on the admissibility of evidence and it is not such an error as should be reviewed in the interest of justice as unassigned error.

We quote from the record the matter on which the panel based its reversal:

"Q. Do you have the receipt?

"A. Yes, sir, I do.

"Q. May I see it?

"A. (Witness hands paper to counsel.)

"MR. FLORES: May we have this marked as Defendant's Exhibit No. 1, your Honor? (Court Reporter marks receipt as Defendant's Exhibit No. 1 for identification).

"Q. Who gave you this receipt?

"A. My roommate, Ruben.

"Q. Where did he get it from?

"A. Mr. Adrian Sanchez.

"Q. You are sure that is the receipt you got?

"A. Yes, sir, I am positive.

"Q. And you agreed to pay five hundred dollars. for this furniture?

"A. Yes, sir.

"Q. And you were going to pay one hundred dollars a month–?

"MR. BORCHERS: Objection to his testifying or to obtaining testimony from an exhibit that has not been admitted in evidence.

"MR. FLORES: At this time, I will introduce the Defendant's Exhibit No. 1 into evidence.

"THE COURT: You are offering it?

"MR. FLORES: Yes, sir.

"THE COURT: Are there any objections?

"MR. BORCHERS: At this time the State would object; Ruben Sa-

lazar is a witness available to the defendant to verify the authenticity of that very exhibit.

"THE COURT: The objection will be sustained."

The appellant's former roommate, Ruben Salazar testified when shown the exhibit marked as Defendant's Exhibit No. 1 for Identification that he had never before seen that exhibit. The purported receipt (Defendant's Exhibit No. 1 for Identification) was never again offered in evidence even for the purposes of a bill of exception. See Art. 40.09, Sec. 6(d). Since the exhibit that the court refused to admit was not offered for a bill of exception and brought to us in the record nothing was preserved for review. *Mutscher v. State*, 514 S.W.2d 905 (Tex.Cr.App.1974); *Toler v. State*, 546 S.W.2d 290 (Tex.Cr.App.1977); *Deary v. State*, 510 S.W.2d 956 (Tex.Cr.App. 1974). We were in error on original submission in reviewing this matter in the interest of justice when the error, if any, was not even preserved in the trial court.

We now turn to consideration of the grounds of error raised in appellant's brief. Appellant, in five grounds of error, claims that the trial court erred in allowing the State to use a prior "conviction" for impeachment during the cross–examination of appellant and further argues that the evidence is insufficient to support his conviction. On the impeachment issue, the relevant portion of the cross–examination was as follows:

"Q. Have you ever been convicted of a felony before, Mr. Van Sickle?

"MR. FLORES: Your Honor, objection. May we approach the Bench?

"THE COURT: Yes, you may approach the Bench.

(CONFERENCE at the Bench outside the hearing of the jury, between all counsel and the Court:)

"MR. FLORES: I would like to have a hearing on this outside the presence of the jury. We have talked to the Judge in Oklahoma and he told us it was a deferred judgment and that the record has been expunged.

"MR. BORCHERS: Unless it is a conviction for purposes of probation–

"THE COURT: He is on the stand, and for the purpose of impeachment–here is a case; it is Simmons vs. State. Do you want to read it?

"MR. BORCHERS: I would like to look at it.

"MR. FLORES: No, sir, that's fine.

"MR. BORCHERS: May I proceed?

"THE COURT: You may proceed, counsel.

(WITHIN the hearing of the jury, to-wit:)

(Cross examination continued by Mr. Borchers:)

"Q. Mr. Van Sickle, did you ever live in Oklahoma?

"A. No, sir, I didn't.

"Q. You never did?

"A. No, sir.

"Q. Were you ever convicted of a felony?

"A. Sir, I don't know how to answer that, as far as–

"Q. You've had a lot of difficulty answering my questions, Mr. Van Sickle, but go ahead and give it a try.

"A. As far as I know, I haven't.

"Q. Try and explain that to me, because I have some information that clearly indicates otherwise. Why is that a problem?

"A. Well, sir, I got in trouble one time, and–

"Q. Let's get specific, Mr. Van Sickle. In January of 1975?

"A. No, sir, it was sometime in 1973.

"Q. Okay. You are sworn under oath. Go ahead Mr. Van Sickle.

"A. And–(hesitation.)

"Q. It was for grand larceny, was it not?

"A. Yes. It was 1973 and 1974. I am not really sure. As far as I knew there was never a trial, a hearing, or anything.

"Q. But you were convicted on a plea of guilty and placed on probation on January 23, 1975?

"A. No, sir, there was never any probation.

"Q. Your lawyer has just informed me that he talked to the Judge and you were placed on probation, a deferred type of judgment.

"A. Sir, I don't know what probation is, but I suppose my attorney should know.

"Q. I would think that he would be correct over you, is that correct?

"A. Yes, sir, he would."

As rebuttal evidence, the prosecutor subsequently introduced an F.B.I. "rap sheet" which stated that appellant had been convicted of grand larceny in Guymon, Oklahoma in January, 1975. The evidence was admitted without any objection by defense counsel. After the jury found appellant guilty, the prosecutor again cross–examined appellant during the punishment phase about his plea of guilty to grand larceny in Oklahoma without any objection from defense counsel. Prior to trial, appellant was told by the prosecutor that he would be prosecuted for perjury if he did not tell the truth about the Oklahoma plea.

At the hearing on the motion for new trial, appellant for the first time introduced an authenticated copy of the relevant court order from Oklahoma. The order stated that appellant pleaded guilty to grand larceny in January, 1975, and the judgment was deferred pending the outcome of probation, that appellant had completed his probation, and that in August, 1976, the case was discharged without judgment of guilt and with the plea being expunged from the record. It is undisputed that the Oklahoma charges did not amount to a final conviction under Art. 38.29, V.A.C.C.P., and that the prosecutor should not have used these charges to impeach appellant.

The issue, however, is whether appellant properly objected to the admission of this evidence at the time of trial. The defendant must specifically object to the wrongful introduction of a prior conviction to preserve the error for review. *McClinton v. State*, 338 S.W.2d 715 (Tex.Cr.App. 1960). No such objection was made in this record. Appellant requested that the court consider the matter outside the presence of a jury. This was not a specific objection to the introduction of the evidence and appellant did not secure a ruling even on this request. There was also no objection to this evidence when it was again introduced both in the guilt and punishment stages of the trial. Finally, no effort was made to present documentary evidence at the time of trial to show that the plea of guilty was expunged and did not result in a final conviction. Introduction of this documentary proof was necessary to obtain exclusion of the evidence. *Poore v. State*, 524 S.W.2d 294 (Tex.Cr.App.1975). The error was not preserved for appellate review.

Appellant makes two further arguments. Initially, he claims that this court should review the error because the prosecutor had prior knowledge that the conviction was not valid and thus acted in bad faith. The evidence adduced at the hearing on the motion for new trial showed that the prosecutor obtained his knowledge of the conviction from the F.B.I. "rap sheet" admitted into evidence during the trial, which made no mention of the 1976 dismissal of the Oklahoma charges. Defense counsel and appellant repeatedly told the prosecutor that the judgment was never entered and that the plea had been expunged, but they never substantiated their assertions with documentary proof.

A prosecutor cannot inquire in good faith about a prior conviction if he knows that conviction is not final. *Goad v. State*, 464 S.W.2d 129 (Tex.Cr.App.1971); see also *Cohron v. State*, 413 S.W.2d 112 (Tex.Cr.App.1967). However, the prosecutor must have actual knowledge that the conviction is not final in order to support a

finding of bad faith. See *Smith v. State*, 409 S.W.2d 409 (Tex.Cr.App.1966). Nor is the prosecutor obligated to inquire into whether the conviction was final. Id. In this case, defense counsel told the prosecutor that the conviction was invalid. Nevertheless, in the absence of documentary proof, the prosecutor was free to disbelieve these statements. In *Poore v. State*, supra, the court held that such documentary proof was necessary before a trial court must exclude evidence of a witness' prior conviction, since the interested party's own statements were not enough.

".  .  . any witness being impeached by prior convictions could simply claim that such convictions had been reversed, suspended, probated, appealed, etc. and were therefore unavailable for impeachment, despite the inherent unreliability of such self–serving declarations.  .  .  . Such testimony is exculpatory and self–serving and it is more likely that such testimony would be given falsely. Hence, the rationale for the rule we adopt today: that documentary evidence is required to deny the finality of a conviction introduced for impeachment purposes."

524 S.W.2d 296–97. The prosecutor testified that he did not believe appellant's claims that his conviction was invalid. The circumstances in this case are insufficient to show that the trial court abused its discretion in believing this testimony.

Second, appellant argues that he was denied his constitutional right to effective assistance of counsel. Counsel on appeal contends that appellant's retained trial counsel breached a legal duty to appellant by failing to obtain a copy of the Oklahoma court order of dismissal and expungement in time for use at trial, and by failing to object to the admission of the F.B.I. "rap sheet" into evidence. There was no apparent tactical justification for these actions. At the hearing on the motion for new trial, trial counsel testified that he made no effort to obtain a copy of the Oklahoma court order because he had been retained to handle the case only two weeks before trial and because he did not think the prosecutor would use the prior conviction with only the "rap sheet" to substantiate it.

■ The sufficiency of an attorney's assistance must be gauged by the totality of the representation of the accused and an isolated failure to object to improper evidence does not affirmatively demonstrate the counsel's overall ineffectiveness. *Ewing v. State*, 549 S.W.2d 392 (Tex.Cr.App. 1977). Ineffective assistance sufficient to deny a fair trial has been found where counsel failed to object to introduction of a series of prejudicial and inadmissible extraneous offenses. *Cude v. State*, 588 S.W.2d 895 (Tex.Cr.App.1979); *Ruth v. State*, 522 S.W.2d 517 (Tex.Cr.App.1975). However, where the errors are less flagrant the failure to object is generally not enough to show deprivation of the constitutional right. *Ewing v. State*, supra; *Williams v. State*, 535 S.W.2d 352 (Tex.Cr.App.1976); *Long v. State*, 502 S.W.2d 139 (Tex.Cr.App.1973). "We interpret counsel to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir. 1960), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

■ There is no set standard for deciding whether the facts of this particular case demonstrate ineffective assistance. In other facets of the trial, trial counsel adequately represented appellant. We find, based on the totality of circumstances, that the failure to timely obtain documentary evidence of the dismissal and expungement of the Oklahoma charge along with the consequent failure to properly object to admission of these matters at trial are not alone sufficient to show ineffective assistance of counsel.

■ Appellant also contends that the evidence is insufficient to support his conviction. Appellant was convicted for the theft of furniture from the teacher's lounge of the high school which employed him as an assistant football coach. The stolen furniture was found in appellant's apartment. School officials gave evidence showing that

appellant had had the opportunity to accomplish the theft. Appellant's defense was that he purchased the furniture through an arrangement set up by his roommate. The roommate testified that this was false and that he had, on occasion, even asked appellant where the furniture had come from. Although the evidence is circumstantial, it is sufficient to sustain the verdict of the jury.

The State's motion for rehearing is granted; the judgment is affirmed.

CLINTON, Judge, dissenting.

In extensive litigation concerning criminal identification records in its files the FBI was admonished that it "cannot take the position that it is a mere passive recipient of records received from others" since by its maintaining and disseminating those records it "puts into the system a capacity for both good and harm," *Menard v. Saxbe*, 498 F.2d 1017, 1026 (D.C. Cir. 1974). Nevertheless, the court was later forced to acknowledge that "the FBI is not and cannot be the guarantor of the accuracy of the information in its criminal files," *Tarlton v. Saxbe*, 507 F.2d 1116, 1128 (D.C. Cir. 1974); see, on remand, 407 F.Supp. 1083 (D.C.1976), proposed corrective measures. Notwithstanding unwillingness of the FBI to vouch for the data it disseminates and recognition by the federal judiciary that inaccuracies inhere in the "practical limits" to its responsibility *id.* at 1127, today this Court permits a prosecutor to harm an accused by claiming a prior conviction reported on an FBI "rap sheet" over the earnest protestations of his trial counsel that there never was a conviction and given an opportunity the truth of the matter would be demonstrated.

As I understand their stated positions, all my Brothers then writing in *Zillender v. State,* 557 S.W.2d 515 (Tex.Cr.App.1977) did not disagree with the statements of law made by the majority at 517:

"The generally acknowledged policies of requiring specific objections are two—fold. First, a specific objection is required *to inform the trial judge* of the basis of the objection and *afford* him the *opportunity to rule* on it. Second, a specific objection is required to *afford opposing counsel* an *opportunity to remove* the objection or supply other testimony. (citing authority) In accordance with these policies, a number of exceptions to the general rule that a party cannot complain on appeal to the overruling of a general objection or an imprecise specific objection have been created. (citing authority) Thus, where the correct ground of exclusion was *obvious* to the judge and opposing counsel, no waiver results from a general or imprecise objection." [1]

Now, keeping *Zillender's* teachings in mind, let us examine the colloquy between counsel and court, noting editorial comments in the margin.

"Q: Have you ever been convicted of a felony before, Mr. Van Sickle? [2]

MR. FLORES: Your Honor, objection. [3] May we approach the bench?

\*     \*     \*     \*     \*     \*

(CONFERENCE at the bench outside the hearing of the jury, between all counsel and the Court:)

MR. FLORES: I would like to have *a hearing on this* outside the presence of the jury. We have talked to the Judge in Oklahoma and he told us it was a *deferred judgment* [4] and that the *record has*

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

2. Curiously enough, propriety of simply asking the question seems to depend on what the facts of its answer are; see, e. g., *Smith v. State,* 409 S.W.2d 409 (Tex.Cr.App.1966) and cases cited therein.

3. As will immediately appear, counsel was voicing an objection to the question and to what would surely follow if the matter were pursued; his effort was to prevent the skunk from getting into the jury box.

4. Section 3d(c), Article 42.12, V.A.C.C.P., provides as to a dismissal of proceeding of and dismissal from a deferred judgment or adjudication: "A dismissal and discharge under this section *may not be deemed a conviction* for the

*been expunged.*[5]

MR. BORCHERS: *Unless* it is a conviction for purposes of probation . . . [6]

THE COURT: He is on the stand, and for the purpose of impeachment—*here is a case;*[7] it is *Simmons v. State.*[8] Do you want to read it?"

The questions and answers that followed in front of the jury are reproduced in the majority opinion, and need not be repeated here. As to the admission of that material before the jury, the majority concludes that error was not preserved for appellate review, and faults appellant for not presenting the necessary documentary proof to obtain exclusion of the evidence. Therein is the nub of my disagreement.

The district attorney may become a loose cannon unless the accused has first secured him. Without himself presenting any evidence of a conviction and against protestations that there is none—it having been ordered expunged—the prosecutor is permitted to pretend that there has been because the accused fails to produce documentary proof to the contrary. "Where are your papers?"—heretofore alien to this country—is made a proper question in a court of law.

Kafkaesque, the majority now requires a citizen to be prepared to demonstrate that

he is not a convict by immediately producing papers of an event that has been ordered obliterated from the pages of the history of his personal life. Patently, one who has been given to understand that he is not a convict should not be expected to anticipate a claim that he is and to be ready to prove that he is not. But, just as surely, should the claim be made the citizen who requests it ought be allowed to demonstrate that the claim is false.

Whether the prosecutor is asking in "good faith" is beside the point. What is at issue here is a matter of due process and due course of law. Even granting he is free to disbelieve a testifying accused, to allow a *prosecutor* to reject representations of his attorney, an officer of the court, is to nullify the respective roles of the judge of the trial court and the attorney. The majority seeks to avoid this issue by casting the colloquy before the trial court in terms of "defense counsel told the prosecutor that the conviction was invalid." The record shows that defense counsel represented to the court that the Oklahoma judge "told us it was a deferred judgment and that the record has been expunged"—an entirely accurate statement as it turned out. The representation was for the court to determine, not for the prosecutor to disbelieve. The determination by the trial court, based on *Simmons v. State,* supra, was erroneous,

---

purposes of disqualifications or disabilities imposed by law for conviction of an offense. . . . ."

5. Can there be any doubt about what the trial court was being informed and asked to rule on? The lawyer wanted a hearing to prove what he had just stated so that the matter would not be pursued further in front of the jury. This portion of the scenario is right out of *Smith v. State,* 409 S.W.2d 409 (Tex.Cr.App.1966) and *Maddox v. State,* 115 S.W.2d 644 (Tex.Cr.App. 1938).

6. Can there be any doubt about the prosecutor's apprehension of the meaning and effect of the statement of counsel for appellant as to the status of the Oklahoma case?

7. A trial judge who produces at the Bench a lawbook or reproduction of an opinion believed to be on the very point being raised is either

clairvoyant or has been alerted informally that *the matter is likely to come up.* In any event, the statement of the trial court shows it understood the problem and thought it resolved by the case cited, believed the opportunity sought by counsel was not necessary and concluded the matter was, therefore, closed.

8. Obviously the reference is to *Simmons v. State,* 456 S.W.2d 66, at 70-71 (Tex.Cr.App. 1970): "A person who *is a witness may be* asked, for the purpose of impeachment, if he has not been convicted for a felony or an offense imputing moral turpitude. If he *denies* it, the State, by proper proof, may show the truth of such statement so denied. * * *

The witness can be compelled to answer that he has been convicted . . . if such is the fact, or the record of conviction can be introduced to attack his credibility."

and the testimony it permitted was manifestly harmful.

I dissent.

ONION, P. J., and ROBERTS and PHILLIPS, JJ., join.