**Ex parte Roland CRUZ.**

No. 69394.

Court of Criminal Appeals of Texas, En Banc.

Oct. 28, 1987.

**54**

Gerald E. Bourque, Bellaire, for appellant.

John B. Holmes, Jr., Dist. Atty., and Eleanor Montague McCarthy, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is a habeas corpus application filed pursuant to Article 11.07, V.A.C.C.P. After a jury trial, applicant was convicted of involuntary manslaughter. The trial judge assessed punishment at 5 years' confinement. The Houston Court of Appeals affirmed applicant's conviction in an unpublished opinion delivered on March 15, 1984.

Applicant now contends that he was deprived of effective assistance of counsel at trial. Initially, he alleges that trial counsel improperly advised him that he was eligible to receive probation from the court, when in fact he was ineligible under Article 42.-12, Sec. 3f(a)(2), V.A.C.C.P. and such erroneous advice resulted in his decision to have the trial court assess punishment.

After conducting an evidentiary hearing, the trial judge agreed with the applicant's first contention and found that applicant was denied effective assistance of counsel in that trial counsel gave applicant erroneous advice concerning his eligibility for probation. In pertinent part, the judge made the following findings of fact:

"7.   No affirmative finding of a deadly weapon was entered on the Judgment in this cause.

"8.   At the time Applicant was assessed punishment on December 15, 1982, Article 42.12, Section 3f(a), V.A.C.C.P. provided that the trial judge could not assess probation, '(2) to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom.' "

"9.   [Trial counsel] stated that he did not consider the issue of any affirmative finding as a factor in this case when making his tactical decision whether to advise Applicant to go to the court or a jury for punishment. Although [trial counsel] testified that he was first aware of 'affirmative findings' 20 to 30 years ago, the Court takes judicial notice that even aside from Section 3f(a)(2), the first statutory reference to 'affirmative findings' was in Article 42.12, Section 15(b) as amended effective August

29, 1977, relating to the issue of parole eligibility.

"10. [Trial counsel] did not consult the statutes concerning probation eligibility in Applicant's case.

"11. [Trial counsel] told Roland Cruz (Applicant) that he was eligible for probation from the judge. Trial counsel ... filed a Motion for Probation in the cause.

"12. Having seen reference to Article 42.12 in Applicant's pleadings, [trial counsel] stated at the evidentiary hearing that he thought a trial judge could 'set aside' the requirements of that statute and grant probation.

"13. Based on [trial counsel's] advice that the trial court could, and probably would, assess probation, Applicant allowed punishment to be assessed by the trial court.

"14. Had Applicant been advised that the judge was precluded by law from considering probation, and that the jury had that option, he would have chosen to have punishment assessed by the jury."

The trial court then went on to make its conclusions of law and recommended that relief be granted to applicant. We note that this Court is not bound by the findings of the trial court in a habeas corpus proceedings such as this. *Ex parte McCormick*, 645 S.W.2d 801 (Tex.Cr.App.1983); *Ex parte Garcia*, 548 S.W.2d 405 (Tex.Cr. App.1977).

Applicant's mother was the first witness at the evidentiary hearing. She testified that defense counsel told her that since this was her son's first conviction, that the most the judge would give him would be probation. Applicant also testified at the evidentiary hearing that defense counsel assured him he would receive probation from the trial judge. According to applicant, defense counsel never told him that he could have the jury assess punishment; neither did defense counsel inquire into any possible witnesses who could have testified at the punishment hearing, such as applicant's wife, mother or employer. Finally,

when asked if he had known that the judge could not consider probation at the punishment stage of his trial but the jury could have considered probation, what he would have done, applicant testified that he would have gone to the jury for punishment.

Defense counsel testified at the evidentiary hearing that he had been practicing law for thirty-five years. Other than talking to applicant and the mother of the victim, defense counsel could not remember if he performed any other type of investigation as to the facts of the case. Defense counsel related that he informed applicant that he had a right to have either the jury or the court assess punishment. However he advised applicant that since a small child had been killed, a jury might very well give him a considerable prison sentence. He also advised applicant that he felt Judge McMaster to be a fair man and he felt it advisable to go to him for punishment. When he asked applicant what he wanted to do, applicant told counsel he would follow his advice. Defense counsel also testified that he did not tell applicant that he would definitely receive probation, although they did file a motion for probation. As to the actual punishment hearing, counsel testified that he did not present any witness at the punishment hearing, nor did the applicant provide him with the names of any possible witnesses that might testify at the punishment hearing. However, had applicant told him of any witnesses that might have been beneficial, he would have called on them to testify. Furthermore, since the court ordered a P.S.I., which contained information about appellant's family and employer, he did not think it beneficial to call these people as witnesses. Defense counsel further testified that he did not tell applicant's mother that applicant would get probation because there was no way he could predict what the judge would do.

As to the actual sentence, defense counsel testified on direct examination as follows:

"Q. Mr. [Defense Counsel], did you expect Judge McMaster to give the defendant probation in this case?

"A. I expected him to give him as light a sentence, reduce it to misdemeanor. I did not expect him to give him five years in the penitentiary. That was the judge's position.

"Q. In other words, you were hoping for reduction to a misdemeanor or probation?

"A. Yes, ma'am.

. . . . .

"Q. Were you basing your expectation on prior dealings in this court?

"A. Based my decision on the evidence that was presented and upon my knowledge of general practice of law, my understanding of people. I did not know what the P.S.I. was going to reveal."

On cross-examination, defense counsel testified in part as follows:

"Q. Let me ask you this: You did say, Mr. [Defense Counsel], that earlier in your testimony, on direct, that it [the shooting] was an unfortunate accident, I think was your phrase?

"A. Well, I think it was. Thought it was.

"Q. Did you ask the court, while you were drafting, or while the jury charge was being drafted, did you at any time ask this court for a charge of accident?

"A. I don't remember.

"Q. Did you ask the court for a charge as to criminally negligent homicide?

"A. I don't remember.

"Q. Did you at any time discuss with the court anything about an affirmative finding of a deadly weapon?

"A. I don't remember.

"Q. As of August 13, 1984, can you tell us what section of the code, if there is one, what section of the code precludes the judge from giving, from considering probation in an involuntary manslaughter, deadly weapon case?

"A. Well, I understood, I saw in the pleadings, 42.12 I believe, but I still think he can do it.

"Q. I beg your pardon?

"A. I still think it can be done if the court wants to set aside, do what he wants to do. Judge George Walker did it two months ago in a case.

. . . . .

"Q. Do you recall a conversation that you and I had in May?

"A. I recall you calling me. I don't recall the conversation word for word.

"Q. Do you recall telling me that you felt like going to Judge McMaster for punishment and somehow obtaining probation?

"A. I may have. I really thought the judge would let him off the hook.

"Q. Would you explain to me, please, how you expected—could you explain to me, please, how you expected the jury to return a misdemeanor conviction for criminally negligent homicide?

"A. I didn't expect the jury to do that. I expected them to say not guilty.

"Q. Who did you expect to reduce it to a misdemeanor?

"A. I thought the court could if he wanted to.

"Q. After a jury verdict?

"A. He could grant a new trial if he wanted to.

"Q. After a jury verdict?

"A. Certainly.

"Q. Are you aware, Mr. [Defense Counsel], that the judges who have been giving probation in matters such as these have been mandamused (sic) by the Courts of Criminal Appeals and those probations have been set aside?

"A. No, sir."

On redirect the following occurred:

"Q. Mr. [Defense Counsel], do you recall whether or not an affirmative finding of a deadly weapon was made in this case?

"A. I don't believe so. I don't have any real recollection of it.

"Q. Was it your belief at the time that if no affirmative finding of a deadly

weapon was made that the judge could grant probation?

"A. That was my thought then and still is."

On recross, defense counsel was questioned further about affirmative findings:

"Q. Do you know what an affirmative finding is?

"A. Certainly.

.    .    .    .    .

"Q. When did you first become aware of affirmative findings in general?

"A. Twenty-five or thirty years ago.

"Q. What is the significance of an affirmative finding of a deadly weapon?

"A. I understand it now, if the judge finds an affirmative finding there was a deadly weapon used, under some acts of Article 42.12, he cannot get probation. I am not satisfied with that yet.

"Q. Are you saying, when you used the word 'now,' that it has come to your attention since the punishment hearing of Mr. Cruz, that is, after that point, that upon a finding of affirmative finding of a deadly weapon, that is, that the judge is precluded from giving probation?

"A. I understand that. I don't think it is necessarily true. I didn't expect that when we were trying the case.

"Q. Because you were not aware of it?

"A. I presume that is true."

On redirect, the following occurred:

"Q. Are you saying you were not aware of affirmative findings at the time this case was tried?

"A. I didn't consider it. I didn't say I wasn't aware of it. I said I didn't consider it.

"Q. Do you recall that you did not consider the possibilities of the judge or the jury making an affirmative finding of a deadly weapon in this case?

"A. I don't remember.

"Q. Are you saying you do not recall?

"A. That is correct."

The questioning was concluded by the following:

"Q. Mr. [Defense Counsel], if you had known that Judge McMaster could not give probation, would you still have gone to the judge for punishment?

"A. Yes, I would have in a case of this type. A jury could have given him more than five years. I considered that also."

Following defense counsel's testimony, Judge I.D. McMaster took the stand. Judge McMaster testified that he did not make an affirmative finding of a deadly weapon. When asked if he was of the opinion that applicant was eligible for probation at the time of sentencing, McMaster replied that after considering the facts of the case and reading the P.S.I., he would not have given probation even if the applicant had been eligible for probation. Finally McMaster testified that Article 42.12, supra, played no part in his determination of applicant's punishment.

Applicant has not seen fit to furnish us with a statement of facts from either the guilt-innocence stage or the punishment stage of his trial.

In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court wrote:

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 692.

The Supreme Court then went on to apply this definition to a sentencing proceeding in a capital murder case but noted the following:

"We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance." 466 U.S. 686, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

Because applicant's complaint deals with the punishment or sentencing phase of his trial, it appears from above that the two-pronged test set out in *Strickland* is not applicable to the instant case. Thus we look to the standard used before the Supreme Court handed down *Strickland*.

■ In *Ex parte Duffy*, 607 S.W.2d 507 (Tex.Cr.App.1980), this Court, relying on *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), held that the effectiveness of counsel was to be judged by a single standard under the Sixth Amendment: "reasonably effective assistance of counsel". Under this standard the sufficiency of an attorney's assistance is gauged by the totality of the representation of the accused. *Passmore v. State*, 617 S.W.2d 682 (Tex.Cr.App.1981); *Van Sickle v. State*, 604 S.W.2d 93 (Tex.Cr.App. 1980) (State's Motion for Rehearing); *Ewing v. State*, 549 S.W.2d 392 (Tex.Cr.App. 1977). This constitutional right to counsel does not mean errorless counsel or counsel whose competency is to be judged by hindsight. *Mercado v. State*, 615 S.W.2d 225 (Tex.Cr.App.1981). The right to effective assistance of counsel means counsel reasonably likely to render reasonably effective assistance of counsel. *Passmore v. State*, supra; *Cude v. State*, 588 S.W.2d 895 (Tex.Cr.App.1979).

We note first that applicant, his present attorney and the trial judge are laboring under the mistaken idea that Article 42.12, Sec. 3f(a)(2), supra, barred applicant from receiving probation.

At the time of appellant's trial in 1982, Article 42.12, Sec. 3f(a)(2) provided that a trial court could not grant probation

> "to a defendant when it is shown that the defendant used or exhibited a deadly weapon as defined in Section 1.07(a)(11), Penal Code, during the commission of a felony offense or during immediate flight therefrom. Upon affirmative finding that the defendant used or exhibited a deadly weapon during the commission of an offense or during immediate flight therefrom, the trial court shall enter the finding in the judgment of the court. Upon an affirmative finding that the

deadly weapon the defendant used or exhibited was a firearm, the court shall enter that finding in its judgment."

In *Jones v. State*, 596 S.W.2d 910 (Tex. Cr.App.1980), this Court had occasion to construe Art. 42.12, Sec. 3f(a)(2), supra. Jones urged on appeal that the trial court erred in failing to admonish him prior to his plea of guilty that he was ineligible for probation. Jones, like our applicant, based his contention on Art. 42.12, Sec. 3f(a)(2), supra. Jones contended that since he pled guilty to the offense of murder, where he was charged with shooting the deceased with a gun, he was statutorily precluded from receiving probation. This Court disagreed and held that such a prohibition only occurs under the statute when the trial court makes an *affirmative finding* and *enters* such finding on the judgment. Since Jones' judgment contained no such affirmative finding, Jones was eligible for probation.

■ The same situation is present in the instant case. Applicant was charged with recklessly causing the death of the victim by shooting her with a gun. A gun is not a deadly weapon per se. *Boyett v. State*, 692 S.W.2d 512 (Tex.Cr.App.1985). The indictment did not specifically allege the use or exhibition of a deadly weapon nor was there a special issue submitted to the jury at guilt-innocence concerning the use of a deadly weapon. *Polk v. State*, 693 S.W.2d 391 (Tex.Cr.App.1985). Finally, the trial judge as the finder of fact at the punishment hearing had the power to add the affirmative finding to the judgment if the facts showed and he believed that the applicant used or exhibited a deadly weapon during the commission of the offense. *Ex parte Webster* 704 S.W.2d 327 (Tex.Cr. App.1986); *Fann v. State*, 702 S.W.2d 602 (Tex.Cr.App.1986); *Flores v. State*, 690 S.W.2d 281 (Tex.Cr.App.1985). However, a review of the judgment shows that this was not done. Thus no affirmative finding was made and under *Jones*, applicant was eligible to receive probation. *Delgado v. State*, 677 S.W.2d 776 (Tex.App.–San Antonio 1984, no petition).

█ The record does show that perhaps defense counsel was not clear on the law of affirmative findings and the mandatory nature of the statute should an affirmative finding been made. However, we find that his misunderstanding of the law did not result in error so egregious as was manifested in *Jackson v. State* (Tex.Cr. App.1985, No. 115–84, delivered July 24, 1985).[1]

Defense counsel properly informed applicant of his eligibility for probation. He also advised applicant about the punishment attitudes of a jury in a case involving the shooting death of a child versus the punishment attitude of an experienced trial judge. From the record before us we are unable to say that applicant's decision to go to the trial judge for punishment was not an informed and conscious piece of trial strategy.

█ Applicant also contends that counsel's ineffectiveness was manifested in three other ways. First, counsel failed properly to investigate the facts of the case concerning different theories as to the cause of death of the victim. Second, he failed to present any witnesses at the punishment hearing when applicant's mother, wife and employer were willing and able to testify. Third, counsel was unaware of the applicable law pertaining to this case in the areas of probation, lesser included offenses, and accident.

In a post-conviction habeas corpus proceeding, the burden of proof is upon the applicant. *Ex parte Salinas,* 660 S.W.2d 97 (Tex.Cr.App.1983); *Ex parte Alexander,* 598 S.W.2d 308 (Tex.Cr.App.1980). An allegation of ineffective counsel will be sustained only if it is firmly founded and the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815 (Tex.Cr.App. 1982). As to applicant's first contention regarding counsel's investigation of the case, other than applicant's assertions in his application, there is nothing in the record before us to indicate that defense counsel did not properly investigate different theories of the cause of death.

As to the contention regarding the presentation of witnesses at the punishment stage of applicant's trial, defense counsel testified at the evidentiary hearing that the applicant did not provide him with the names of any witnesses that he wished to be called. He further testified that his strategy at the punishment phase would have been different had a jury been deciding the punishment. However since the court was deciding punishment and since the court had heard all the evidence at guilt-innocence and was going to read the P.S.I. which contained information concerning applicant's family and employer, he felt it would do no good to call any witnesses to testify. The record before us does not contain a copy of the P.S.I. so we are unable to tell what information the trial judge considered in assessing punishment. Furthermore, applicant has failed to show how the testimony of his wife, his mother and his employer would have added to the information already before the trial judge. Once again, applicant has failed to sustain his burden as to this allegation. We find counsel was not ineffective in this area.

Finally, applicant alleges that counsel was not aware of the law regarding probation, lesser included offenses and accident as it applied to this case. A thorough review of the record compels us to hold again that applicant has not met his burden. We have discussed counsel's knowledge of the probation law above. The only mention of the law regarding lesser included offenses and accident at the evidentiary hearing occurred when applicant asked defense counsel if he had asked the court for jury charges on accident or the lesser included offense of criminally negligent homicide. Defense counsel's reply to both queries was that he did not remember. Once again we are compelled to find that

---

1. This Court mistakenly applied the *Strickland* test in *Jackson* even though the sole error complained of concerned only the punishment phase of Jackson's trial. After reviewing *Jackson* using the "reasonably effective" test, we find that our decision as to the merits of the case was correct. However, any language contained in *Jackson* suggesting that *Strickland* test should be used in analyzing the punishment phase of an ordinary trial is hereby overruled.

the record does not support applicant's contentions.

We find that applicant has failed to discharge his burden of having the record affirmatively demonstrate the alleged ineffectiveness of counsel's representation. Thus, relief is denied.

MILLER, J., dissents.

CLINTON, Judge, dissenting.

"Fully stated, the test for effective counsel is 'counsel reasonably likely to render *and rendering* reasonably effective assistance,' *McKenna v. Ellis*, 280 F.2d 592 [at 590] (5 Cir.196[0]) as quoted approvingly by the Court in *Caraway v. State*, 417 S.W.2d 159, 162 (Tex.Cr.App. 1967)."

*Ex parte Duffy*, 607 S.W.2d 507, 514, n. 14 (Tex.Cr.App.1980).[1]

The majority opinion in this cause dramatically demonstrates the utter folly of blindly following opinions of the Supreme Court of the United States when we decide questions readily answerable under our own law. Only because in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court did not consider "the role of counsel in an ordinary sentencing," 466 U.S., at 686, 104 S.Ct. at 2064, does the majority revisit Texas standards for judging effective assistance of counsel. While some may welcome the return, one consequence will surely be more confusion ahead.

There is already a federal standard for counseling a plea of guilty, for which the "prejudice" test of *Strickland v. Washington*, supra, is made. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). If not yet the rule in Texas, see *Ex parte Adams*, ·707 S.W.2d 646 (Tex.Cr.App.1986), the Court certainly adopts it in *Ex parte Pool*, 738 S.W.2d 285 (Tex.Cr.App.1987).

Now when the plea is not guilty there is a federal set of tests for capital cases; the same tests apply to trial of noncapital cases through the first phase. But since the Supreme Court has pretermitted a federal standard for effective assistance during a punishment proceeding, we look to state law.

The Supreme Court can create such anomalies because in writing countrywide constitutional rules it has the prerogative of leaving gaps for the states to close. This Court, however, does not have that option. We must write the rules for the bench and bar to know ineffective assistance of counsel when they see it. Such was our objective in Part III of *Ex parte Duffy*, supra, at 513–516, wherein we concluded:

> "*Until further experience teaches otherwise* we will apply here and continue to use the standard of 'reasonably effective assistance of counsel' to test adequacy of representation afforded an accused by retained as well as appointed counsel when the performance is to be judged by the Sixth Amendment right to assistance of counsel made applicable to the states by the Fourteenth Amendment—*also by our own 'right to be heard' provision of Article I, Section 10, Bill of Rights, Constitution of Texas.*"

If "further experience" has taught that the lesson in *Ex parte Duffy* is no longer valid, some of us were not in class. What we have learned from experience is that from time to time a majority of this Court seems driven to pretend that Justices of Supreme Court of the United States alone understand and are competent to decide constitutional law—not only for the country but also for this Court and other courts of this State. But when the Supreme Court has not written on an issue the majority is willing to let Texas courts try their hand. Those notions are an affront to the Constitution of the State of Texas.

*Ex parte Duffy* makes absolutely plain that under the "right to be heard" clause

1. "The standard we retain mandates an examination both of *competence,* 'likely to render,' and of *assistance,* 'and rendering,' in determin-
ing effectiveness of counsel." *Id.,* at 516, n. 17. (All emphasis is mine throughout this opinion unless otherwise indicated.)

of Article I, § 10 in our own Bill of Rights, "reasonably effective assistance of counsel" is a constitutional standard for judging performance of counsel. That it is fit and proper to apply it here to the matter of "ordinary sentencing" means that but for the intransigence of the majority the standard is equally appropriate for testing adequacy of all representation by counsel.

Therefore, the question is "whether this petitioner was 'left to the mercies of incompetent counsel,' incompetent in the sense that his purported assistance was unreasonably ineffective." *Ex parte Duffy*, at 526–527. Without judging by hindsight, I find this record requires an affirmative answer.

Trial counsel made a judgment call "that since a small child had been killed, a jury might very well give him a considerable prison sentence," and because "he felt Judge McMaster to be a fair man.... he felt it advisable to go to him for punishment." Maj. op. at p. 55. Or as the majority calls it, "an informed and conscious piece of trial strategy." Maj. op. at p. 59. So far so good. But once his client decided to follow his advice, counsel was obliged to plan and to prepare tactics to execute that strategy.

His first duty was to acquaint himself not only with the law but also with the facts relative to the matter of punishment in order to carry out his responsibility to present a "best case" to the trial judge. While legally and factually he knew enough to file an application for probation, his own testimony supports findings by the trial judge to the effect that counsel had not studied relevant punishment law.[2] When the application was filed, presumably pretrial to be timely, if the fact is that he had never been convicted of a felony, of course applicant was then eligible for probation. But the issue is his state of preparedness for every foreseeable eventuality at a punishment hearing.

While his counsel "felt Judge McMaster to be a fair man," counsel did not *know*

that if the proof showed his client used or exhibited deadly weapon, as it surely did, Judge McMaster was authorized, if not mandated, by law to make and enter an affirmative finding, and thereby render applicant not only ineligible for probation but also delay his eligibility for release on parole. Not knowing of those possible consequences, counsel could not plan and prepare to meet them with feasible alternatives.

Indeed, according to his testimony he failed to investigate the relevant facts to devise any tactic at all in advance of the punishment hearing. When asked to justify his "expectations" for his client, counsel said they were based "on the evidence that was presented and upon my knowledge of general practice of law, my understanding of people." Then he volunteered a statement that speaks volumes of unpreparedness: *"I did not know what the P.S.I. would reveal."* Those bases were faulted by none other than Judge McMaster when he testified that "after considering the *facts of the case and reading the P.S.I.*, he would not have given probation...."

This record shows that counsel could do no more than his own testimony proves he did—nothing! On behalf of his client he would hope for the best and expect miracles, namely, "reduction to a misdemeanor," "that the judge would let him off the hook" or "grant a new trial."

Gauged by the totality of his representation of applicant with respect to punishment, for lack of preparation as to law and facts counsel was not likely to render effective assistance, and for want of any representation other than subjective hope and vain expectations he did not render effective assistance.

Because the majority does not cause the Court to vacate assessment of punishment and sentence and order a fresh hearing on punishment, I respectfully dissent.

DUNCAN, Judge, dissenting.

First, the problematical and purely speculative test for ineffective assistance of

---

2. Beside the point is *Jones v. State*, 596 S.W.2d 910 (Tex.Cr.App.1980), holding error did not attend failure to admonish that defendant was ineligible for probation since the judgment ultimately entered did not contain an affirmative finding about a deadly weapon.

counsel enunciated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) should be buried and the more responsible test stated in *Ex Parte Duffy,* 607 S.W.2d 507 (Tex.Cr.App.1980) should be resurrected and given life under Art. I, Sections 10 and 19 of the Texas Constitution.

The problems with the *Strickland* two-part test are essentially twofold: initially, the first part of the test is fallacious in that it begs the question. Or, the proposition that counsel's performance was so deficient that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *Id.* 104 S.Ct. at 2064, simply asserts the very point it establishes in the conclusion. [see: Brooks, et al, *Modern Rhetoric,* 3rd ed. (Harcourt, Brace, & World: New York, 1958), p. 221] Although the statement appears to establish its conclusion it fails to do so; thus, it is fallacious.

The second part of the *Strickland* test is equally fallacious in that it is purely speculative. The principle that an attorney can be deemed constitutionally ineffective only if there "is a reasonable probability that, absent the [attorney's] errors, the fact finder would have had a reasonable doubt respecting guilt," *Strickland v. Washington, supra* 104 S.Ct. at 2069, is a proposition that is premised upon a possibility disguised as a fact. In other words, this part of the Supreme Court's standard is based upon what might have been. "What might have been" can never be proven absolutely. It can only be the subject of speculation with varying degrees of reliability. This is hardly a premise reliable enough to gauge a constitutional standard.

The standard announced in *Ex Parte Duffy, supra* does not suffer the same fallacious reasoning present in *Strickland.* Necessitated by an appalling example of incompetence and ineffectiveness this Court, with no dissents, relied to an extent on *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) and stated that the proper standard to apply when judging the adequacy of representation is whether the accused was accorded reasonably effective assistance of counsel, which should be considered by the totality of the representation.

The test set forth in *Duffy* in it most basic sense is predicated upon observations of what did or did not occur during the representation, whereas the test in *Strickland* is predicated upon what might have been the consequences of one's conduct. That rather significant difference is what makes the *Duffy* standard a more reliable basis for judging the adequacy of representation. Any standard one attempts to follow in judging another's conduct may produce invalid judgments. When the standard is premised upon speculation the judgment will be invariably flawed because the test is flawed.

Notwithstanding the obvious defects in the standard set forth in *Strickland v. Washington, supra,* a majority of this Court has decided to mimic the Supreme Court and apply that standard to claims of ineffective assistance of counsel under Art. I, Sections 10 and 19 of the Texas Constitution. This occurred in *Wilkerson v. State,* 726 S.W.2d 542 (Tex.Cr.App.1986) [Clinton and Teague, JJ., dissenting] (see also: *Hernandez v. State,* 726 S.W.2d 53 (Tex.Cr. App.1986) (Clinton, J., Concurring Opinion; Teague, J., Concurring and Dissenting Opinion)) when this Court, without even discussing the viability of the Texas Constitution, stated that "in determining whether a defendant has received ineffective assistance of counsel, we use the standard set forth in *Strickland v. Washington....*" *Id.* at 548. In support of this conclusion the opinion noted in a footnote that this was the standard that was applied in *Butler v. State,* 716 S.W.2d 48 (Tex.Cr.App. 1986). That was partially true. What was not noted was the following statement in *Butler v. State, Id.:* "*Strickland* interprets the Sixth Amendment to the United States constitution, and therefore establishes the minimum federal constitutional requirement of effective assistance. [citations omitted] Because we find that in this case that minimum federal constitutional standard was not met, we do not need to address the right to counsel provisions of the Texas Constitution, Art. I, Sections 10 and

19." *Id.* at 57, fn. 2. Therefore the authority for adopting *Strickland* is suspect at suspect at best and not persuasive in the least. I cannot understand why a majority of this Court is content to travel a road of blind submission. Contrary to the majority's implicit suggestion, the Supreme Court is not "the sole repository of judicial wisdom and rationality." *State v. Jackson,* 672 P.2d 255, 264 (Mont.1983) (Shea, J. dissenting).

In the case at bar it is obvious, at least to me, that the petitioner's attorney was constitutionally ineffective. He did not know that the trial court could not grant probation if a deadly weapon was used in the offense. Art. 42.12, Sec. 3f(a)(2) V.A.C.C. P. In the absence of this basic legal knowledge he advised the petitioner to allow the Court to assess punishment. What Judge McMaster would or would not have done, or do or did not do, is irrelevant. What is relevant is that the petitioner is constitutionally entitled to make his election as to the source of punishment upon valid representations as to the state of the law. This he was not able to do because his attorney did not know the valid state of the law. In *Ex parte Duffy, supra* this Court stated: "A criminal defense attorney must have a firm command of the facts of the case as well as governing law before he can render reasonably effective assistance to his client in or out of the courtroom." *Id.* at 516. "[A] firm command of the ... governing law ...," *Id.,* in this case is something the petitioner's attorney did not have. Therefore it would have been impossible for him to have imparted it to the petitioner; thus, his representation was not constitutionally effective. Therefore, I respectfully dissent.

TEAGUE, J., joins this opinion.