TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-97-00094-CR







Raul Zavala Robledo, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 96-119-K368, HONORABLE BURT CARNES, JUDGE PRESIDING








 Appellant, Raul Zavala Robledo, appeals from his convictions for intoxication
assault (1) and failure to remain at the scene of an accident and render reasonable assistance. (2) After
the jury convicted appellant of both counts in the same indictment, the trial court assessed
punishment. Appellant pleaded "true" to the prior felony convictions alleged for enhancement of
punishment. The court assessed a life sentence for each offense. (3)



Points of Error


 Appellant advances six points of error. In the first two points, appellant challenges
both the legal and factual sufficiency of the evidence to sustain the conviction for failure to remain
at the scene of the accident and render reasonable assistance under count two of the indictment. 
There is no challenge to the sufficiency of the evidence to sustain the intoxication assault
conviction. In points of error three and four, appellant claims that he was deprived of the effective
assistance of counsel under both federal and state constitutions. Point of error five claims an
improper finding of the use of a deadly weapon during the commission of failure to remain at the
accident scene as charged in count two. Lastly, appellant complains that count two of the
indictment was so fundamentally defective that it charged no offense at all, requiring the
conviction to be set aside, notwithstanding the failure of trial counsel to object or file a motion to
quash or set aside count two.


The Sixth Point of Error


 We begin our discussion with appellant's sixth point of error. If appellant is correct
in his contention, this will largely dispose of the other points of error. Appellant contends that
despite the lack of an objection, the allegations in count two of the indictment are so fundamentally
defective "as to not charge any offense at all and require reversal . . . ."


An indictment is a written instrument presented to a court by a grand jury charging
a person with the commission of an offense. An information is a written
instrument presented to a court by an attorney for the State charging a person with
the commission of an offense. The practice and procedures relating to the use of
indictments and informations, including their contents, amendment, sufficiency,
and requisites, are as provided by law. The presentment of an indictment or
information to a court invests the court with jurisdiction of the cause.



Tex. Const. art. V, § 12(b).

 A defect in an indictment or information, whether it be of form or substance, is
considered waived if it is not objected to prior to the commencement of trial. See Tex. Code
Crim. Proc. Ann. art. 1.14(b) (West Supp. 1999); see also State v. Murk, 815 S.W.2d 556, 557
(Tex. Crim. App. 1991); Studer v. State, 799 S.W.2d 263, 268 (Tex. Crim. App. 1990); Castro
v. State, 970 S.W.2d. 699, 700 (Tex. App.--Corpus Christi 1998, pet. ref'd). To the extent that
the fundamentally defective indictment doctrine or rule can be deemed to still exist, the complaint
on appeal must be that the charging instrument was so deficient that it failed to confer jurisdiction
upon the court to render any conviction. See Nami Hoai Le v. State, 963 S.W.2d 838, 843 (Tex.
App.--Corpus Christi 1998, pet. ref'd) (citing Duron v. State, 956 S.W.2d 547, 549-51 (Tex.
Crim. App. 1997)). The presentation of a constitutionally sufficient indictment to a court invests
the court with jurisdiction. Tex. Const. art. V, § 12(b); Duron, 956 S.W.2d at 550; Cook v.
State, 902 S.W.2d 471, 480 (Tex. Crim. App. 1995); State v. Smith, 957 S.W.2d 163, 165 (Tex.
App.--Austin 1997, no pet.). The constitutional requisites for an indictment are satisfied by a
written instrument accusing a person of the commission of a criminal offense with enough clarity
and specificity to identify the penal statute under which the State intends to prosecute even if the
instrument is otherwise defective. See Duron, 956 S.W.2d at 549; Cook, 902 S.W.2d at 479-80;
Smith, 957 S.W.2d at 165; see also Castro, 970 S.W.2d at 700.

 Although appellant claims that count two, alleging commission of the offense of
failing to remain at the scene of the accident, is fundamentally defective, he fails to list in his
argument under this point what deficiencies exist or what absolutely essential elements are missing
so as to prevent the investment of jurisdiction in the trial court. The State urges that the point of
error is inadequately briefed and presents nothing for review. See Alvarado v. State, 912 S.W.2d
199, 210 (Tex. Crim. App. 1995); Huerta v. State, 933 S.W.2d 648, 650 (Tex. App.--San
Antonio 1996, no pet.); Maldonado v. State, 902 S.W.2d 708, 711 (Tex. App.--El Paso 1995,
no pet.). We observe, however, that in another point of error, appellant complains that count two
contained no culpable mental state. A culpable mental state is required in alleging the offense
contained in count two. See Steen v. State, 640 S.W.2d 912, 915 (Tex. Crim. App. 1982)
(intentionally and knowingly); Goss v. State, 582 S.W.2d 782, 784 (Tex. Crim. App. 1979)
(knowledge of circumstances surrounding defendant's conduct); see also Elias v. State, 693
S.W.2d 584 (Tex. App.--San Antonio 1985, no pet.); Morales v. State, 673 S.W.2d 697 (Tex.
App.--Corpus Christi 1984, no pet.). As appellant concedes, there was no objection on this basis
to the indictment before the trial commenced. Thus, the absence of a culpable mental state or
states in count two was waived. See Murk, 815 S.W.2d at 557. Moreover, the lack of a culpable
mental state did not deprive count two of enough clarity and specificity to identify the penal statute
involved.

 Appellant has also argued elsewhere in his brief that count two is defective because
it failed to allege the "failure to stop," an essential element of the offense of failure to stop and
render aid under article 6701d, sections 38 and 40, under which the prosecution was brought. The
original count two of the indictment did allege in part: "and failed to immediately stop such
vehicle at the scene of such accident or as close thereto as possible, or to forthwith return to the
scene of the accident." This part of the allegations included in count two was abandoned by the
State without objection, leaving in place the allegations of failure to remain at the scene of the
accident and render assistance. In Elias, 693 S.W.2d at 588, the court pointed out that the "failure
to stop" was not an essential element of the offense of failure to remain at the scene of the accident
and render assistance. See also Bevil v. State, 141 S.W.2d 362, 364 (Tex. Crim. App. 1940)
(even if the defendant stops he is still guilty if he fails to render assistance as required); cf. Morris
v. State, 786 S.W.2d 451, 456-57 (Tex. App.--Dallas 1990, pet. ref'd) (proof of noncompliance
with any one of items to be furnished upon an accident is sufficient to constitute an offense).

 The instant indictment met the constitutional requisites. It accused a person,
Robledo, of the commission of a criminal offense with enough clarity and specificity to identify
the penal provisions under which the State intended to prosecute, even if the indictment was
defective in not alleging a culpable mental state. The indictment thus invoked the jurisdiction of
the district court. The fact that the State later abandoned some allegations in count two did not
render the indictment defective or deprive the trial court of the jurisdiction it had acquired. 
Appellant's sixth point of error is overruled.

 In his first point of error, appellant challenges the legal sufficiency to support the
conviction for failure to remain at the scene and render reasonable assistance under count two of
the indictment.


Facts


 Irene Mikulencak, the complainant, testified that near noon on April 15, 1995, she
was driving a pick-up truck north on County Road 973. About two miles south of Taylor,
Mikulencak observed a car in the opposite lane being driven "awfully fast." The car then crossed
the double yellow line on the highway, came into the northbound lane, and crashed into
Mikulencak's truck. Mikulencak got out of her vehicle less than five minutes after the impact. 
She saw the driver of the other vehicle get out of his car and sit on the ground. This driver was
later identified as appellant. Mikulencak stated that appellant never approached her, talked to her,
asked her if she needed medical attention, offered to go for help, or even looked in her direction. 
At the time Mikulencak's nose was bleeding and she realized her arm was broken. Within a few
minutes of the accident, her son, Darrell, arrived on the scene. He had been driving in the same
direction as appellant. She asked her son to check on the people in the other car. The first
ambulance took Karen Rodriguez, a passenger in appellant's car, away from the scene. A second
ambulance removed Mikulencak.

 Dr. Patricia Rosen testified that Irene Mikulencak suffered protracted loss of the
use of her arm and suffered serious bodily injury to her face and eye. A metal plate had been
inserted into her arm and the damage to the left side of her face required the use of three metal
plates.

 Darrell Mikulencak was the first person on the scene after the accident. He first
checked on his mother and then went to the other vehicle where appellant was seated in the
driver's seat. Karen Rodriguez and her baby were in the back seat. Darrell drove his truck to the
nearby home of Jason Susan, whom he asked to call 911. When he returned to the scene, both his
mother and appellant were out of their vehicles. Appellant approached the vehicle he had been 
driving and took something out from under the driver's seat. Darrell left the scene again to obtain 
towels for the injured individuals, but upon his return he observed appellant walking south away
from the scene. This was before the emergency medical personnel arrived. While he was at the
scene, Darrell never saw appellant check on his mother.

 Jason Susan, a reserve constable, heard the sound of the accident while he was in
his bathroom. Darrell Mikulencak arrived and asked Susan to call 911, which he did. Within a
few minutes, Susan arrived on the scene and found appellant sitting on the ground in "a state of
stunness." Appellant appeared to "snap out of it" and went to the front seat of his car and
removed a paper or envelope. Susan never saw appellant approach Irene Mikulencak to determine
if she was injured or needed help. He did not see appellant leave the scene, but appellant was
gone when the emergency personnel arrived.

 John Susan, Jason's father, heard the crash while he was at a grocery store. He
arrived on the scene within four or five minutes and observed appellant get out of a car and sit on
the ground. He told appellant that appellant needed medical attention, but appellant did not appear
concerned or interested in the other injured parties at the scene. John Susan saw appellant retrieve
an envelope from the car. When John Susan went to flag down a passing truck, appellant left the
scene. John Susan, based on his work experience in cafes and for a school district, testified that
he believed that appellant was intoxicated or on drugs.

 Highway Patrol Officer Sam Lovelace received a report of the accident about
11:50 a.m. on April 5, 1995. He arrived on the scene about 12:25 p.m. Appellant was not there. 
Lovelace went to the Johns Community Hospital in Taylor in an attempt to locate appellant. He
found Karen Rodriguez there, but not appellant. Subsequently, he went to a house in Taylor
following Rodriguez's instructions. With the assistance of an unidentified citizen, who knew
appellant, Lovelace went to two or three other houses and found one with a trail of blood leading
up to it. Children from the house next door told the officer that a bleeding man had gone to the
hospital. Officer Lovelace returned to the Johns Hospital at 3:00 p.m. and found that appellant
had just arrived. Appellant admitted to Lovelace that he was the driver of the car in the accident,
that he did not know what happened, that he must have looked off. Lovelace related that appellant
"reeked" of an alcoholic beverage. Appellant denied he had any alcoholic beverages after the
accident, but admitted he had a couple of beers "before the accident and that he had been drinking
heavily the night before." Lovelace was of the opinion that appellant was intoxicated at the time
of the accident. Appellant consented to a blood test and the blood was drawn at 3:11 p.m. 

 From the position of the vehicles, the debris and skid marks at the scene, Lovelace
determined that appellant had crossed over the yellow line and that his vehicle struck Irene
Mikulencak's truck. This opinion was shared by Henry Jones, an insurance adjuster, who also
investigated the accident.

 Karen Rodriguez, with a grant of immunity, testified for the State. She related that
she and appellant got together "to party" on April 4. Appellant picked her and her infant son up
in Taylor in the afternoon. They purchased beer and cocaine and later picked up Carla Peacock
and purchased more cocaine. At Carla's house, they watched television, smoked marihuana and
drank beer. About 3:00 or 4:00 a.m. on April 15, Carla locked appellant, Karen and her son out
of the house. These three left in a car belonging to Carla's parents, went to a friend's house to
rest, and drove to Austin about 6:00 or 7:00 a.m. to borrow money from a relative. After
appellant obtained the money, he purchased more cocaine and placed it in an envelope. Appellant
and Karen decided to return to Carla's house. Karen related that shortly before the accident she
and appellant were drinking beer and smoking cocaine, that they were both intoxicated at the time
of the accident, and that appellant was trying to drive and light a crack pipe when the accident
occurred. After the accident, Karen saw appellant searching for something in the front seat of the
car. While appellant did not inquire if she was hurt or needed help, he did tell her he was going
to "take off." She saw him get into the back of a truck. Karen suffered a ruptured kidney and
fractured neck and underwent surgery for her injuries. Laboratory blood tests indicated the
presence of cocaine and marihuana in her system.

 Dr. Robert Cummings was called to the Johns Community Hospital. He examined
appellant between 5:00 and 6:00 p.m. on April 15, 1995. Appellant had multiple rib fractures and
a large cut on his knee. A piece of glass was found in his right eye several days later. Appellant
told Dr. Cummings that he had been making a U-turn when he was hit by a car going 55 miles per
hour. He admitted to the doctor that he had had three or four beers that morning. At the time of
the examination, Dr. Cummings did not detect any alcohol on appellant's breath nor did appellant
appear to be under the influence of any narcotic.

 Robert Buckner, a forensic scientist for the Department of Public Safety, tested a
sample of appellant's blood taken with appellant's consent and found cocaine metabolites, the
after-results of cocaine ingestion. Sheryl Peyton, a D.P.S. forensic toxicologist, stated that lab
tests on appellant's blood showed a .03 grams per 100 milliliters of blood alcohol concentration. 
Responding to hypotheticals, Peyton estimated that a subject, testing as appellant did, and who had
his last drink at noon with his blood drawn at 3:00 p.m., and who had the average .03 per
metabolization rate, would have had an alcohol blood content of .07 at noon. If the last drink was
at 11:00 a.m., the alcohol content would have been .09 at noon.

 Carla Peacock testified that she was with appellant and Karen at the Peacock house
in Thorndale and that they left about 1:00 a.m. on April 15. She denied that any of them had
cocaine that evening, claiming that they only drank beer.

 Consuelo Robledo, appellant's mother, testified for the defense that she saw
appellant at 11:00 a.m. on April 15 and he was not drunk or high on drugs at the time. Sheryl
Robertson, Carla Peacock's sister, testified that she had seen appellant about 7:30 or 8:00 p.m.
on April 14 and that he was not intoxicated at the time.


Legal Sufficiency


 In determining whether the evidence is legally sufficient to support the judgment,
we view the evidence in the light most favorable to the verdict, asking whether any rational trier
of fact could have found beyond a reasonable doubt all the essential elements of the offense. See
Jackson v. Virginia, 443 U.S. 307, 319 (1979); Lane v. State, 933 S.W.2d 504, 507 (Tex. Crim.
App. 1996); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin 1994, pet. ref'd).

 The evidence, viewed in this light, and all reasonable inferences drawn therefrom
are evaluated in this review. See Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App.
1995). A reviewing court must evaluate all evidence, rightly or wrongly admitted, that the trier
of fact was permitted to consider. See Garcia v. State, 919 S.W.2d 370, 378 (Tex. Crim. App.
1997); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Beltran v. State, 728
S.W.2d 382, 389 (Tex. Crim. App. 1987). The standard for review is the same for both direct
and circumstantial evidence cases. See Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App.
1992). Appellate courts measure the legal sufficiency of the evidence against a hypothetically
correct jury charge. See Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In
analyzing a challenge to the legal sufficiency of the evidence, the reviewing court does not realign,
disregard, or weigh the evidence. Rodriguez v. State, 939 S.W.2d 211, 218 (Tex. App.--Austin
1997, no pet.). The jury as trier of fact is the sole judge of the credibility of the witnesses and the
weight to be given the testimony. It may accept or reject all or any part of any witness's
testimony. See Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); Williams v. State,
692 S.W.2d 671, 676 (Tex. Crim. App. 1984). Reconciliation of evidentiary conflicts is solely
the function of the trier of fact. See Miranda v. State, 813 S.W.2d 724, 733-34 (Tex. App.--San
Antonio 1991, pet. ref'd); Juarez v. State, 796 S.W.2d 523, 524 (Tex. App.--San Antonio 1990,
pet. ref'd).

 Appellant argues that at the time he left the scene of the accident, the State's
evidence indicated that the complainant's son had already contacted the medical authorities and
there were others present to assist the complainant. Thus, he contends that all the "operative facts
necessary to protect the complaining witness were satisfied before he left the scene, and the
evidence is legally insufficient as a matter of law." We do not agree. The complainant's son
asked another individual to call 911, and the emergency personnel, if then called, had not arrived
before appellant left the scene. There was no evidence that appellant was aware of any calls for
assistance by others. The fact that a victim is unconscious or dead or unable to receive the
information from the defendant as required by law does not excuse the defendant from complying
with the provisions of the statute. See Galvan v. State, 846 S.W.2d 161 (Tex. App.--Houston [1st
Dist.] 1993, no pet.). Likewise, a defendant is not excused from complying with the requirements
of the statute because, unknown to him, a call to emergency medical authorities has been made by
someone. Nor may he leave to others his duty under the statute. Appellant cites no authority to
support his contention. We reject the argument. (4)

 Appellant also argues without merit that, even if he had the physical ability, he
should not have attempted to move the complainant from her vehicle because it is common
knowledge that greater injury may be caused by moving an injured person without the presence
of expert medical assistance. The evidence shows that the complainant was out of her vehicle
before appellant left the scene. His assertion of common knowledge does not reflect an
insufficiency of the evidence.

 Next, appellant argues that he did not have the actual ability to carry the
complainant to a medical facility because of his physical condition after the accident and the fact
that the vehicle he had been driving was disabled. In addition to failing to cite authorities,
appellant does not point out how these facts absolve appellant of any guilt and render the evidence
insufficient as a matter of law. The record shows that appellant was stunned after the accident,
but was able to walk around retrieve an envelope from his car, and then leave the scene and hop
in a passing truck. He did not report to a hospital until three hours after he left the scene.

 In the second part of his argument, appellant urges the insufficiency of the evidence
because the State failed to allege or prove a culpable mental state. We have earlier discussed that
count two of the indictment did not allege a culpable mental state, but that there was no objection,
and any error was waived. In submitting count two to the jury, the trial court required that the
jury find beyond a reasonable doubt that appellant intentionally or knowingly did not remain at
the scene of the accident before it could convict under count two. Proof of a culpable mental state
generally relies upon circumstantial evidence. See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim.
App. 1978); Rodriguez v. State, 793 S.W.2d 744, 748 (Tex. App.--San Antonio 1990, no pet.). 
Intent and knowledge can be inferred from acts, words, and conduct of the accused. See Dues v.
State, 634 S.W.2d 304, 305 (Tex. Crim. App. 1985); Parramore v. State, 853 S.W.2d 741, 745
(Tex. App.--Corpus Christi 1993, pet. ref'd). The trier of fact may infer intent and knowledge
from any facts in evidence which tend to prove the existence of such culpable mental states. See
Skillern v. State, 890 S.W.2d 849, 880 (Tex. App.--Austin 1994, pet. ref'd).

 In other portions of his argument, appellant complains that the indictment did not
allege any offense at all. This contention has been rejected in our discussion of another point of
error along with appellant's argument that the State did not allege failure to stop. The allegation
of "failure to stop" was abandoned and the indictment still charged the offense of "failure to
remain at the scene." "Failure to stop" is not an essential element of the offense charged. See
Sheridan v. State, 950 S.W.2d 755, 757 (Tex. App.--Fort Worth 1997, no pet.); Elias, 693
S.W.2d at 587. Appellant complains that his counsel failed to object to the lack of a "necessity"
defense, but this is an ineffective assistance of counsel claim, not a sufficiency issue. The failure
to request a defensive issue in the court's charge generally waives any error. See Posey v. State,
966 S.W.2d 57, 61 (Tex. Crim. App. 1998). Under the evidence adduced, appellant would not
have been entitled to an instruction on "necessity." See Allen v. State, 971 S.W.2d 715, 720
(Tex. App.--Houston [14th Dist.] 1998, no pet.). In order to warrant a plea of justification based
on necessity, a defendant must specifically admit to the offense. See id.; Auston v. State, 892
S.W.2d 141, 145 (Tex. App.--Houston [14th Dist.] 1994, no pet.). This includes admission of
the culpable mental state. Allen, 971 S.W.2d at 720; Klein v. State, 662 S.W.2d 166, 170 (Tex.
App.--Corpus Christi 1983, no pet.). Appellant did not admit to committing the offense and may
not now maintain he committed it out of necessity.

 Viewing the evidence in the light most favorable to the verdict, we conclude that
a rational trier of fact could have found, beyond a reasonable doubt, all the essential elements of
the offense charged in count two of the indictment. We overrule point of error one.


Factual Sufficiency


 In the second point of error, appellant challenges the factual sufficiency of the
evidence to sustain the conviction. Factual and legal sufficiency questions are decided by different
standards of review. See Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). In
evaluating a factual sufficiency question, the appellate court begins with the presumption that the
evidence is legally sufficient to support the conviction. Id. at 134. In this type of analysis, the
reviewing court views all the evidence without the prism of "in the light most favorable to the
prosecution," and sets aside the verdict only if it is so contrary as to be clearly wrong and unjust. 
See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); Clewis, 922 S.W.2d at 129. 
There must always be a deference to the findings of the jury. See Cain, 958 S.W.2d at 407. "A
Court of Appeals may not reverse a jury's decision simply because it disagrees with the result; the
appellate court must defer to jury findings and may find the evidence factually insufficient only
where necessary to prevent manifest injustice." Id. In the event a court of appeals finds the
evidence factually insufficient, it must provide a detailed explanation of that finding so that it is
clear that the court accorded the proper deference to the jury findings. Id.

 Appellant argues that "[w]hile the evidence reflects that appellant never talked to
the complainant before he left the scene, it is without doubt that appellant [who did not testify] saw
that numerous other persons were present and assisting the complainant before he left to obtain
his own medical treatment." After viewing all the evidence and applying the factual sufficiency
standard of review, we conclude that the jury verdict is not so contrary to the overwhelming
weight of the evidence as to be clearly wrong and manifestly unjust. The second point of error
is overruled.


Ineffective Assistance of Counsel


 In his third and fourth points of error, appellant claims that he was denied the
effective assistance of counsel as guaranteed by the Sixth Amendment to the United States
Constitution and article I, section 10 of the Texas Constitution.

 The standard for testing claims of ineffective assistance of counsel was adopted in
Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court
held that in order to show ineffective assistance of counsel, a convicted defendant must (1) show
that his trial counsel's performance was deficient, in that counsel made such serious errors he was
not functioning effectively as counsel; and (2) show that the deficient performance prejudiced the
defense to a degree that the defendant was deprived of a fair trial. A strong presumption exists
that counsel rendered adequate assistance and made all significant decisions in the exercise of
reasonable professional judgment. Id. at 469.

 The Strickland standard has been adopted in Texas for resolving allegations of
ineffective assistance of counsel under both the federal and state constitutions. See Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); Banks v. State, 819 S.W.2d 676, 681 (Tex.
App.--San Antonio 1991, pet. ref'd).

 Whether the Strickland standard has been met is to be judged by the "totality of the
representation" rather than by isolated acts or omissions of trial counsel, and the test is applied
at the time of the trial, not through hindsight. Strickland, 466 U.S. at 695; McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996); Wilkerson v. State, 726 S.W.2d 542, 548 (Tex.
Crim. App. 1986), cert. denied, 480 U.S. 940 (1987). Any allegation of ineffectiveness must be
firmly founded in the record and the record must affirmatively demonstrate the alleged
ineffectiveness. See Ex parte Cruz, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987). The burden of
proving ineffective assistance of counsel by a preponderance of evidence rests upon the convicted
defendant. Patrick v. State, 906 S.W.2d 481, 495 (Tex. Crim. App. 1995), cert. denied, 517
U.S. 1106 (1996); Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); Banks, 819
S.W.2d at 681. Both prongs of the Strickland test must be shown. Failure to do so defeats the
ineffectiveness claim. See McFarland, 928 S.W.2d at 500.

 The particular facts and circumstances of each case must be considered in any
ineffective assistance claim. See Johnson v. State, 691 S.W.2d 619, 626 (Tex. Crim. App. 1984),
cert. denied, 474 U.S. 865 (1985). Any error in trial strategy will be deemed ineffective
assistance of counsel only if counsel's actions are without any plausible basis. See Ex parte Burns, 
601 S.W.2d 370, 372 (Tex. Crim. App. 1980); Castoreno v. State, 932 S.W.2d 597, 601 (Tex.
App.--San Antonio 1996, pet. ref'd). The Strickland standard has never been interpreted to mean
that the accused is entitled to errorless or perfect counsel. See Bridge v. State, 726 S.W.2d 558,
571 (Tex. Crim. App. 1986). Due to the wide range of lawyering skills and judgment, a lawyer's
performance is not required to be perfect. See Greene v. State, 928 S.W.2d 119, 122 (Tex.
App.--San Antonio 1996, no pet.).

 Appellant sets out what he describes as a "litany" of either direct errors, omissions
committed, or other suspicious or questionable actions taken by trial counsel. Appellant's counsel
on appeal recognizes that "some" of the errors or omissions would not, in and of themselves, be
sufficient to demonstrate that trial counsel was "legally ineffective." He believes, however, that
these matters provide this Court with the "entire picture" of trial counsel's performance so that
the court will be able to render an appropriate ruling. (5) Appellant's difficulties in demonstrating
ineffective assistance of counsel arise from the fact that he has only the instant appellate record
to support any claim made. (6) Where record sources are inadequate to demonstrate a claim of
ineffectiveness, appellate counsel often argue that they would have pursued a different course of
action or tried the case differently. That fact will not support a finding of ineffectiveness. See
Ingham v. State, 679 S.W.2d. 503, 509 (Tex. Crim. App. 1984); Blott v. State, 588 S.W.2d 588,
592 (Tex. Crim. App. 1979); Ybarra v. State, 890 S.W.2d 98, 112 (Tex. App.--San Antonio
1994, pet. ref'd). Moreover, assertions in appellate briefs not supported in the record cannot be
accepted as fact. See Vanderbilt v. State, 629 S.W.2d 709, 717 (Tex. Crim. App. 1981).

Belated Entry


 Appellant initially claims that his trial counsel made a belated entry into the case
based solely upon a formal motion filed November 19, 1996, requesting that trial counsel be
substituted for previous counsel. The jury selection began on November 18, 1996, with trial
counsel representing appellant. There is some indication in the record that counsel had been
involved in the case in September 1996, not just on the day jury selection began. Appellant
announced ready for trial, and upon inquiry by the court, appellant and his retained trial counsel
assured the court that he had more than ten days to prepare for trial. On appeal, appellant
acknowledges that a belated entry does not constitute ineffective assistance but believes it gives
a gloss to his other contentions. The record is not adequate to establish the belated entry claimed.


Counsel's Health


 Appellant raises a question of trial counsel's health during trial referring to "ulcer
attacks." He gives one record page reference, cites no authority, and presents no argument except
to suggest a continuance should have been requested.

 One afternoon during the trial, defense counsel asked the court for permission to
remain seated when addressing the court as her "ulcer was kicking in" and it was painful. 
Permission was granted. No recess was requested. The next morning upon inquiry, counsel told
the court that she was feeling much better. Without more in the record, appellant has not
sustained his burden of proof as to this claim. This is also an obvious gloss to appellant's overall
contention.

Judicial Notice


 Appellant contends that in determining whether he was deprived of the effective
assistance of counsel this Court should take judicial notice of the record of another case pending
in this Court in which the State Bar of Texas is seeking disbarment of appellant's trial counsel. 
Appellant asserts that the State Bar's action is based on counsel's conduct prior to the instant trial. 
Appellant is not claiming, however, that trial counsel was not in good standing with the State Bar
at the time of the instant trial.

 An appellate court is bound by the record before it. See Thomas v. State, 723
S.W.2d 696, 701 (Tex. Crim. App. 1986); McCambridge v. State, 712 S.W.2d 499, 505 (Tex.
Crim. App. 1986). The general rule is that an appellate court cannot go to the record of another
case for the purpose of considering matters and testimony not shown in the record of the case
before it. See Evans v. State, 622 S.W.2d 866, 868 (Tex. Crim. App. 1980); Salinas v. State, 542
S.W.2d 864, 867 (Tex. Crim. App. 1976); Miranda v. State, 813 S.W.2d 724, 738 (Tex.
App.--San Antonio 1991, pet. ref'd). Thus, we may not look to the record of another case to find
support for appellant's contention now raised on appeal in this case. See Garza v. State, 622
S.W.2d 85, 89-90 (Tex. Crim. App. 1981). Appellant's contention is without merit.


Pretrial Motions


 Appellant has generally divided the balance of his ineffective assistance claims into
two parts--the lack of certain pretrial motions and trial error. We shall consider each of these
categories.

 Appellant's counsel on appeal notes that no pretrial motions were filed by trial
counsel. He concedes that pretrial motions need not be filed and heard in every criminal case, but
argues that some pretrial motions were not only appropriate but "required" in the instant case. 
As noted earlier, the fact another counsel might have tried the case differently does not constitute
ineffective assistance of trial counsel. See Ingham, 679 S.W.2d at 509.

 The statute allowing trial courts to set any criminal cause for pretrial hearings is
not a mandatory statute but directed to the trial court's discretion. State v. Reed, 888 S.W.2d 117,
119 (Tex. App.--San Antonio 1994, no pet.); Montalvo v. State, 846 S.W.2d 133, 137 (Tex.
App.--Austin 1993, no pet.). A trial court may decline to hear any pretrial motion filed and
require a defendant to lodge his objections at trial. See Calloway v. State, 743 S.W.2d 645, 649
(Tex. Crim. App. 1988); Bosley v. State, 414 S.W.2d 468, 469-70 (Tex. Crim. App.), cert.
denied, 389 U.S. 876 (1967). Thus, the filing of a pretrial motion does not guarantee a pretrial
hearing. Moreover, the mere failure to file appropriate pretrial motions is not categorically
deemed as ineffective assistance. See Madden v. State, 911 S.W.2d 236, 241 (Tex. App.--Waco
1995, pet. ref'd); Ponce v. State, 901 S.W.2d 537, 542 (Tex. App.--El Paso 1995, no pet.); Wills
v. State, 867 S.W.2d 852, 857 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd); Martinez v.
State, 824 S.W.2d 688, 690 (Tex. App.--El Paso 1992, pet. ref'd). In addition, an appellant must
show that the pretrial motion would have been granted in order to satisfy Strickland, see Jackson
v. State, 973 S.W.2d 954, 957 (Tex. Crim. App. 1998), or show how he was harmed. See
Cavazos v. State, 899 S.W.2d 5, 8 (Tex. App.--San Antonio 1995, pet. ref'd); Valdez-Fuerte v.
State, 892 S.W.2d 103, 111 (Tex. App.--San Antonio 1994, no pet.).


Motion for Continuance


 Appellate counsel believes a pretrial motion for continuance was "required" to be
filed by trial counsel in the instant case. He speculates that if there was a belated entry into the
case by trial counsel or if more time was needed to prepare for trial or to file other pretrial
motions, counsel should have sought a continuance. Appellant makes no showing how such a
motion would have been successful or how he was harmed. Moreover, the contention is not 
properly briefed. See Tex. R. App. P. 38.1(h).


Discovery


 Appellant takes note that no pretrial discovery motion was filed. He contends that
the reporter's record indicates that trial counsel had not reviewed medical records or photographs
of the accident scene, did not know of the immunity agreement between the State and witness
Karen Rodriguez, and was unaware of a tape-recorded conversation made by appellant. Only
record page references are given to support these assertions. (7) There is no showing that a pretrial
discovery motion would have covered all the matters mentioned and would have been meritorious
and successful. See Valdez-Fuerte, 892 S.W.2d at 111. A claim that counsel was ineffective for
failing to file a motion for discovery was rejected in Passmore v. State, 617 S.W.2d 682 (Tex.
Crim. App. 1981). There was no support in the Passmore record concerning the existence of the
matter the defendant maintained could have been discovered. In addition, there was no showing
what type of informal discovery had occurred. Id. at 685. The record in the instant case is
inadequate to clearly establish that trial counsel failed to review certain matters or was totally
unaware of other matters. Furthermore, the type of informal discovery that might have occurred
is not shown.

 Under the discovery discussion in appellant's brief, complaint is also made that trial
counsel did not file a pretrial motion requesting that the prosecution to inform her what extraneous
offenses might be used or what prior convictions might be offered. Rule 404(h) of the Texas
Rules of Evidence is cited. The matter is not otherwise briefed. The failure to object to
inadmissible evidence, even extraneous offenses, does not necessarily constitute ineffective
assistance of counsel. See Ybarra, 890 S.W.2d at 113. It follows that the failure to file a pretrial
motion or a request under Rule 404(h) does not necessarily constitute ineffectiveness. There is
nothing to show appellant was unable to acquaint his trial counsel with his past criminal record
or that she was unaware of that record. Moreover, prior convictions were alleged in the
indictment for enhancement of punishment. Appellant does not disclaim informal discovery in this
regard. Clearly, appellant has failed to show harm.


Motion to Quash-Count One


 Appellant faults his trial counsel for failing to file a motion to quash or set aside
count one of the indictment alleging the offense of intoxication assault. Tex. Penal Code Ann.
§ 49.07 (West 1994). He urges that the failure to allege the manner and means of intoxication
either by alcohol, controlled substances, or a combination of both rendered count one defective
as it did not give proper notice. The offense of intoxication assault was added to the 1994 Penal
Code and is a relatively new offense. See Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01,
eff. Sept. 1994, 1993 Tex. Gen. Laws 3586, 3697. Appellant may be correct as to the necessary
allegations but he cites no direct authority decided under section 49.07 of which trial counsel
should have been aware. His principal contention is that a motion to quash would have caused the
State to amend the indictment and that would have given trial counsel at least ten more days to
prepare for trial, (8) or would have preserved error if no amendment had been made. Appellant
makes no effort to show that trial counsel's omission was serious error falling below the
professional norm or that in light of the record and the court's jury charge he was deprived of a
fair trial.


Motion to Quash-Count Two


 Appellant also faults trial counsel for not filing a motion to quash count two of the
indictment. He argues that count two failed to allege "failure to stop." The indictment did allege
that appellant "failed to immediately stop" but this allegation was abandoned by the State as
discussed earlier. It was not an essential element of the offense of failing to remain at the scene
of an accident. It is true that culpable mental states were not alleged but the jury charge included
such culpable mental states. No harm has been shown. Counsel is not required to perform
flawlessly. Trial counsel here was not rendered ineffective by the isolated act of omission to file
a motion to quash as to count two.


Trial Errors-Failure to Invoke The Rule


 Appellant next moves into the area of trial errors in support of his ineffective
assistance of counsel claims. Appellant argues that the failure to invoke the Rule was a "clear
error indicating lack of concentration and/or knowledge on the part of counsel." The record does
not support appellant's broad-faced statement. Trooper Lovelace's testimony was interrupted so
that a Dr. Rosen could testify. During Dr. Rosen's interrogation, trial counsel observed Lovelace
in the courtroom and asked that the Rule be invoked. Nothing in the record shows that other
witnesses were in the courtroom earlier or later in the proceedings. There is absolutely no basis
for an ineffective assistance claim in this regard.


Other Errors


 Appellant complains of his trial counsel's failure to object to "extraneous offenses"
and to hearsay. He makes certain record references but does not offer argument or cite
authorities. These contentions are not properly briefed and appellant has not sustained his burden
of proof. The failure to object to extraneous offenses is not necessarily ineffective assistance,
Ybarra, 890 S.W.2d at 113, and the isolated omission to object to hearsay does not alone
constitute ineffective assistance. See Ex parte Welborn, 785 S.W.2d 391, 393 (Tex. Crim. App.
1990). Appellant has failed to demonstrate how the two prongs of Strickland were met.

 With record references only, appellant complains that his trial counsel also failed
to object to the lack of a predicate for certain testimony of the witnesses Lovelace and Peyton;
failed to object to the collateral impeachment by the State of its own witness, Carla Peacock;
delayed objecting to interrogation of Peacock about appellant's "background and criminal
history"; and did not move for a mistrial after an objection to such testimony was sustained. 
Appellant also observes that his trial counsel called Peacock's sister, Sheryl Robertson, to rebut
Peacock's impeachment, which resulted in Robertson's own impeachment by the State with letters
written by appellant. Appellant then questions how the State obtained possession of such letters
and complains that counsel did not pursue any inquiry as to whether the letters were properly
obtained by the prosecution. Appellant has made a laundry list and has not properly briefed the
contentions. See Tex. R. App. P. 38.1(h). He has not sustained his burden of proof.

 In addition, appellant complains that the State in its jury argument made reference
to extraneous offenses in the record without further objections by trial counsel. The prosecutor
had a right to argue evidence in the record and trial counsel's objections would not have been
sustained. Counsel is not required to perform futile acts in order to be an effective counsel. See
Mooney v. State, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991). Appellant complains that trial
counsel did not request a limiting charge in the jury instructions as to the extraneous offenses. 
Such failure is not, by itself, ineffective assistance of counsel. See Greene, 928 S.W.2d at 122
(citing Johnson v. State, 629 S.W.2d 731, 736 (Tex. Crim. App. 1981)). Appellant has made no
effort to sort out which extraneous offenses would have required a limiting instruction and those
that would not. Moreover, he has not shown harm or how he was deprived of a fair trial.

 Appellant complains that no defense of necessity was requested. Apparently
appellant makes reference to the court's charge. As earlier discussed, the issue was not raised as
required by law. Counsel cannot be faulted for failing to ask for that for which the defense was
not entitled. See Mooney, 817 S.W.2d at 698.

 Appellant observes that the record reflects several notes were received from the jury
during its deliberations which do not appear to have been answered. Appellant urges that his trial
counsel should have sought a further jury instruction or a clarification for the jury, and yet the
record is silent as to any action by counsel. Appellant cites record references only as to the receipt
of the notes. He does not otherwise brief the issue or show harm. Appellant's contention points
up the difficulty of determining ineffective assistance of counsel from this "cold record" alone.

 Appellant also contends that notice of appeal was not given by trial counsel who in
fact "abandoned" him after sentencing. This is a post-trial complaint. This Court extended the
time to file notice of appeal and appellant has failed to show how he was harmed by any delay. 
The record is not sufficiently developed so that this Court can apprize the contention.

 We have tried to examine each act and omission cited by appellant in determining
whether trial counsel's performance was deficient. Judicial scrutiny must be highly deferential. 
A reviewing court must indulge a strong presumption that trial counsel's conduct falls within the
wide range of reasonable professional assistance. See Oestrick v. State, 939 S.W.2d 232, 237
(Tex. App.--Austin 1997, pet. ref'd). And generally, we will not speculate about trial counsel's
trial strategy. See Jackson, 877 S.W.2d at 771; Mayhue v. State, 969 S.W.2d 503, 511 (Tex.
App.--Austin 1998, pet. ref'd). An appellant may rebut the presumption of effectiveness by
providing a record from which an appellate court may determine that counsel's performance at
trial was not based on sound trial strategy or that it had no plausible basis. See Jackson, 877
S.W.2d at 771-72; Bohnet v. State, 938 S.W.2d 532, 536 (Tex. App.--Austin 1997, pet. ref'd).

 In this case the record presented fails to reveal counsel's trial strategy with regard
to the acts and omissions alleged to show ineffective assistance of counsel. In the absence of a
sufficient record on direct appeal, we conclude that appellant has not overcome the strong
presumption that his trial counsel's strategy was reasonable from trial counsel's perspective at
trial. See Mayhue, 969 S.W.2d at 511. Appellant has failed to sustain either prong of the
Strickland test. Points of error three and four are overruled.


Deadly Weapon


 In point of error five, appellant contends that the trial court erred in making an
affirmative finding of the use of deadly weapon in the judgment of conviction under count two
(failing to remain at the scene of an accident) as a matter of law. See Tex. Code Crim. Proc. Ann.
art. 42.12, § 3g(a)(2) (West Supp. 1999). The State urges that an automobile can be a deadly
weapon if the evidence shows that in the manner of its use or intended use, it was capable of
causing death or serious bodily injury. See Davis v. State, 964 S.W.2d 352, 354 (Tex.
App.--Fort Worth 1998, no pet.).

 The offense of failure to remain at the scene of an accident under article 6701d,
sections 38 and 40 is by its nature an offense of omission as opposed to an offense of commission. 
A deadly weapon finding has been upheld where a weapon was used to facilitate a crime by
omission. See Hill v. State, 913 S.W.2d 581, 583-84 (Tex. Crim. App. 1996). In that case, the
Court stated that before an affirmative finding as to the use of a deadly weapon may be made, the
State must prove, beyond a reasonable doubt, that the accused employed or used a deadly weapon
so as to facilitate the associated felony. Id. at 583.

 In this case, appellant did not facilitate his failure to remain at the scene of the
accident and render reasonable assistance by the use of a deadly weapon. The State argues that
appellant's use of an automobile in connection with the accident resulting in injury supports the
trial court's finding at the penalty stage of the trial without a jury (9) that appellant used a deadly
weapon, to wit: an automobile, in connection with the offense of which he was convicted. 
Although the occurrence of an automobile accident is essential to support a conviction of failing
to remain at the scene of the accident, the gravamen of the offense relates to the accused's failure
to remain at the scene and render reasonable assistance after the accident. See Sheridan, 950
S.W.2d at 759. Appellant did not use an automobile as a deadly weapon to facilitate his failure
to remain at the scene and render reasonable assistance as charged in the indictment. Id. 
Therefore, the judgment of conviction as to count two is reformed to delete the affirmative finding
of a deadly weapon. Point of error five is sustained.


 The judgment for intoxication assault is affirmed. The judgment for failing to
remain at the scene to render reasonable assistance is reformed to delete the affirmative finding
that appellant used a deadly weapon. As reformed, the judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion*

Count One: Affirmed

Count Two: Reformed and, as Reformed, Affirmed

Filed: December 17, 1998

Do Not Publish











* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. See Tex. Penal Code Ann. § 49.07 (West 1994).
2. See Tex. Rev. Civ. Stat. Ann. art. 6701d, §§ 38, 40 (West 1977), repealed by Act of
April 21, 1995, 74th Leg., R.S., ch. 165, § 24(a) eff. Sept. 1, 1995, 1995 Tex. Gen. Laws 1025,
1870-71. See now Tex. Transp. Code Ann. §§ 550.021-550.023 (West 1998).
3. The trial court entered two separate judgments and sentences.
4. We have found three cases that at first blush seem to support appellant's argument. See
Bowden v. State, 361 S.W.2d 207, 208 (Tex. Crim. App. 1962); Powell v. State, 341 S.W.2d
915, 916 (Tex. Crim. App. 1961); Williams v. State, 102 S.W.2d 212, 214 (Tex. Crim. App.
1937). We find these cases distinguishable on the facts and for the reasons set forth in Allen v.
State, 971 S.W.2d 715, 718-19 (Tex. App.--Houston [14th Dist.] 1998, no pet.).
5. The State counters with a lengthy description of defense counsel's acts, conduct, and
objections at trial contending that from the "totality of the representation" counsel was not
ineffective under the Strickland standard.
6. No motion for new trial was filed raising the issue of ineffective assistance of counsel. 
See Reyes v. State, 849 S.W.2d 812 (Tex. Crim. App. 1993) (defendant may raise an ineffective
assistance issue in his motion for new trial and in the hearing thereon).
7. An examination of the record page references does not support the expansive claims made.
A claim of ineffective assistance must be firmly founded. See Ybarra, 890 S.W.2d at 112.
8. See Tex. Code Crim. Proc. Ann. art. 28.10(a) (West 1989).
9. The trial court is authorized to make an affirmative finding of the use or exhibition of a
deadly weapon in the commission of the offense where the trial court is the trier of fact at the
penalty stage of the trial and where the jury at the guilt-innocence stage of the trial has made no
such finding. See Ex parte Franklin, 757 S.W.2d 778, 780 (Tex. Crim. App. 1988); Fann v.
State, 702 S.W.2d 602, 604-05 (Tex. Crim. App. 1986) (op. on reh'g); Campos v. State, 927
S.W.2d 232, 235 (Tex. App.--Waco 1996, no pet.).


, to wit: an automobile, in connection with the offense of which he was convicted. 
Although the occurrence of an automobile accident is essential to support a conviction of failing
to remain at the scene of the accident, the gravamen of the offense relates to the accused's failure
to remain at the scene and render reasonable assistance after the accident. See Sheridan, 950
S.W.2d at 759. Appellant did not use an automobile as a deadly weapon to facilitate his failure
to remain at the scene and render reasonable assistance as charged in the indictment. Id. 
Therefore, the judgment of conviction as to count two is reformed to delete the affirmative finding
of a deadly weapon. Point of error five is sustained.


 The judgment for intoxication assault is affirmed. The judgment for failing to
remain at the scene to render reasonable assistance is reformed to delete the affirmative finding
that appellant used a deadly weapon. As reformed, the judgment is affirmed.



 

 John F. Onion, Jr., Justice

Before Justices B. A. Smith, Yeakel and Onion*

Count One: Affirmed

Count Two: Reformed and, as Reformed, Affirmed

Filed: December 17, 1998

Do Not Publish