TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00653-CR






Shelley Edward Davis, Jr., Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 46,181, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING






PER CURIAM


 A jury found Shelly Edward Davis, Jr., guilty of aggravated robbery and burglary. The trial
court assessed punishment at forty years' imprisonment. Appellant raises four points of error contending
that the evidence is factually insufficient to support his conviction, the trial court erred by allowing certain
identification testimony, and he received ineffective assistance of counsel. We will affirm the judgment of
conviction.


Background


 During the afternoon of August 2, 1995, Melvin Fullen sat at his dining room table paying
bills. Appellant entered Fullen's house through an unlocked front door without Fullen's permission. 
Appellant walked over to Fullen, pointed a gun at him and told him to give him all of his money. Appellant
was wearing a t-shirt pulled up over his head to hide his face. At first Fullen thought that the intruder was
his neighbor playing a joke and so just looked at him and said, "go to hell." Appellant told Fullen, "I want
your money, get your hands up." When Fullen stood up, the t-shirt slipped off appellant's head and Fullen
saw appellant's face. Appellant then fled from the house out the front door. Fullen described the intruder
as an African American male about six feet tall, wearing glasses with medium length hair. About a week
after the incident, Fullen saw appellant at a neighbor's house.

 At trial, Fullen identified appellant as the intruder who entered his house. Fullen stated that,
without a doubt, appellant was the intruder, though appellant looked different at trial. Fullen thought that
since the incident, appellant had gained weight and was no longer wearing glasses.

 Pamela Oxendine also testified for the State. She met appellant through friends and had
known him for about four years. Oxendine and appellant often talked to each other on the telephone. On
August 11, 1995, about 1:30 p.m., Oxendine received a telephone call from appellant during which
appellant told her that he had robbed an elderly man who lived in the 2700 block of Grasslands. Fullen
lived at 2714 Grasslands. Appellant told her that he walked into the man's house through an open front
door, saw the man in a small greenhouse watering plants, put a gun to the man's head and demanded
money from him. Appellant told her that he did not get any money from the man or take any property from
the house. Oxendine thought appellant was kidding.

 Later that afternoon, Oxendine went to visit a friend who lived two houses away from
Fullen in the same block of Grasslands. When she arrived, her friend was talking with Fullen about the
intruder at Fullen's house on August 2. Based upon their conversation, Oxendine came to believe that what
appellant had told her in their telephone conversation earlier that afternoon was true.

 Killeen police officer Karl Ortiz, the primary investigating officer, testified that he presented
Fullen with a photographic line up of six men. Appellant's photo was included in the line up. Fullen picked
out appellant's photo as the one most resembling the individual who came into his house though he could
not be positive in his identification.

 Appellant's mother testified on his behalf. She testified that appellant was between 6'3"
and 6'4" tall and recalled that during August 1995, appellant did not wear eyeglasses but instead wore
contacts.


Identification


 By points one, two and four, appellant complains about the identification evidence
supporting his conviction. By point one, appellant contends that the trial court erred by admitting
Oxendine's testimony about his identity because it was not based on her personal knowledge.

 Oxendine testified that she and appellant were acquainted. On August 11, 1995, a little
over a week after the alleged break-in of Fullen's house, she and appellant talked on the telephone. She
could identify appellant's voice based upon her acquaintance with him and her general familiarity with his
voice. After she identified appellant as the caller, appellant told her about robbing a man in the 2700 block
of Grasslands on August 2, 1995. She did not go to the police right away because she did not believe
appellant's story and thought he was kidding. Later that afternoon, Oxendine met with Tanya Fuentes who
was talking with Fullen. The following exchange occurred at trial:


[Prosecutor]: And did you receive a description--well, let me ask you this. Without
getting into the specifics of the conversation that you had with Tanya, were they talking
about a robbery of Mr. Fullen that had occurred?


Oxendine: Yes, they were.


[Prosecutor]: Your Honor, I object to that as hearsay information to this witness.


The Court: Sustained.


[Prosecutor]: Did you receive a description of the individual? Without saying what the
description is did you receive a description of the individual that had supposedly robbed
Mr. Fullen?


[Defense Attorney]: Your Honor, I object to what she received as being hearsay
information. Whatever it was is still hearsay. That doesn't make any difference what is
was, something out of the presence of the courtroom is hearsay, not admissible.


[Prosecutor]: If I may, Your Honor, we're offering this not for the truth of the matter
asserted to her, but whether or not she received a description. It's a simple question. It's
not calling for any hearsay.


The Court: Sustained. I'm sorry overruled. . . . 


[Prosecutor]: Did you receive a description of the individual?


Oxendine: Yes, sir, I did.


[Prosecutor]: And based upon that description did you come to a conclusion of who you
thought personally the individual might have been?


[Defense Attorney]: Your Honor, I object.


Oxendine: Yes.


The Court: That is sustained. Rephrase your question.


[Prosecutor]: Based upon the description that you got did you take your information to
the police?


Oxendine: Yes, I did.


[Prosecutor]: And why did you take your information to the police?


Oxendine: The reason why I took my information to the police because I figured it was
the same suspect that I was told on the telephone what he told me and what he did, so I
went to the police department and reported and wrote a statement.


[Prosecutor]: Without getting into the specifics of the information that you received was
the information you received consistent with the general physical description of this
defendant?


Oxendine: Yes, it was.


[Prosecutor]: Was the description that you received of the incident itself consistent with
what the defendant told you?


Oxendine: Yes, it was.



 Appellant contends that Oxendine's identification testimony was improperly admitted and
violated Texas Rule of Criminal Evidence 701 governing opinion testimony and Rule of Criminal Evidence
602 requiring personal knowledge. Testimony in the form of opinions and inferences is limited to those
opinions and inferences which are rationally based on the perception of the witness. Tex. R. Crim. Evid.
701(a). A witness may not testify to a matter unless evidence is introduced sufficient to support a finding
that the witness has personal knowledge of the matter. Tex. R. Crim. Evid. 602. Appellant suggests that
Oxendine's identification testimony was based upon her conversation with Fuentes. We disagree. 

 Initially, we note that appellant did not object to the portion of the testimony during which
Oxendine referred to a description by Fuentes but did not testify about its contents. In order to preserve
a complaint for appellate review, a party must present to the trial court a timely objection stating the specific
grounds for the ruling desired. Tex. R. App. P. 52(a). Appellant did not raise any objections to
Oxendine's testimony after the prosecutor asked her why she took the information to the police when she
did. 

 Despite appellant's failure to timely object, we note that Oxendine identified appellant as
the person she spoke with on the telephone based upon her acquaintance with appellant. She did not go
directly to the police because she did not immediately believe appellant when he told her that he had
robbed an individual. The prosecutor's further questioning brought out that Oxendine's conversation with
Fuentes confirmed what appellant had told her rather than confirming his identity. The testimony of
Oxendine's conversation with Fuentes explained how she came to believe what appellant had told her and
how she decided to go to the police. The only thing Fuentes' description did was help Oxendine realize
that appellant may not have been joking when he told her that he had robbed a man living on Grasslands. 
Whether appellant fit the description given by Fuentes was within Oxendine's personal knowledge. There
was no issue about Oxendine's ability to identify appellant as the person who confessed the offense to her;
this was a matter within her knowledge. The testimony relating to Oxendine's conversation with Fuentes
was not offered to prove either that an offense occurred or the description of the robber. Additionally, any error in the admission of Oxendine's testimony about her conversation with Fuentes was
harmless. Other testimony exists in the record identifying appellant as the intruder including Fullen's own
testimony. We overrule point of error one.

 By point of error two, appellant contends that he was denied his right of confrontation. 
However, appellant did not raise this issue before the trial court and therefore has failed to preserve the
point of error for appellate review. We overrule point of error two. 

 By point of error four, appellant contends that the evidence is factually insufficient to
support conviction. When reviewing the factual sufficiency of the evidence, an appellate court considers
and weighs all of the evidence. Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); see also
Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). The appellate
court should set aside the conviction only if it is so contrary to the overwhelming weight of the evidence as
to be clearly wrong and unjust. Clewis, 922 S.W.2d at 129. When addressing a factual sufficiency claim,
an appellate court reviews the fact finder's weighing of the evidence, but it cannot substitute its judgment
for that of the fact finder. Id. at 133. 

 We have previously detailed the testimony offered at trial. After reviewing all of the
evidence, we conclude that the conviction was not so contrary to the overwhelming weight of the evidence
as to be clearly wrong and unjust. We overrule point of error four.


Ineffective Assistance of Counsel


 By point of error three, appellant asserts that he received ineffective assistance of counsel
during the guilt/innocence and the punishment phases of trial. Appellant complains about several specific
instances he contends show that he received ineffective assistance of counsel.


Standard of Review

 To prevail on the claim of ineffective assistance during the guilt/innocence phase of trial,
appellant must show that counsel made such serious errors that he was not functioning effectively as counsel
and that these errors prejudiced the appellant's defense to such a degree that he was deprived of a fair trial. 
Strickland v. Washington, 466 U.S. 668 (1988); Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim.
App. 1986). The two-pronged Strickland test requires appellant to show (1) counsel's performance fell
below an objective standard of reasonableness under prevailing professional norms; and (2) there was a
reasonable probability that but for counsel's deficient performance, the result of the proceeding would have
been different. Id.; see also Valencia v. State, 946 S.W.2d 81, 83 (Tex. Crim. App. 1997). To
demonstrate prejudice, appellant must show that there is a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have been different. A reasonable probability is
a probability sufficient to undermine confidence in the outcome. Id. at 694. In reviewing this point of error,
we must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable
professional assistance. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 

 The test for effectiveness of counsel during the punishment phase of a non-capital offense
is (1) whether counsel was reasonably likely to render effective assistance, and (2) whether counsel did
reasonably render effective assistance. Craig v. State, 825 S.W.2d 128, 129-30 (Tex. Crim. App. 1992)
(citing Ex parte Walker, 794 S.W.2d 36, 37 (Tex. Crim. App. 1990) and quoting Ex parte Duffy, 607
S.W.2d 507, 514 n.14 (Tex. Crim. App. 1980)). The right to reasonably effective assistance at the
guilt/innocence and punishment phases of trial does not guarantee appellant errorless counsel. Ex parte
Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App. 1993). 

 The sufficiency of counsel's assistance is gauged by the totality of the accused's
representation. Ex parte Cruz, 739 S.W.2d 53, 58 (Tex. Crim. App. 1987). A fair assessment of
counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, to
reconstruct the circumstances, and to evaluate the conduct from counsel's perspective at the time. Ex
parte Kunkle, 852 S.W.2d at 505. The burden is on appellant to demonstrate ineffective assistance of
counsel by a preponderance of the evidence. Moore v. State, 694 S.W.2d 528, 531 (Tex. Crim. App
1985). Allegations of ineffectiveness will be sustained only if they are firmly founded in the record. Valdes-Fuerte v. State, 892 S.W.2d 103, 110 (Tex. App.--San Antonio 1994, no pet.). 


Specific Complaints

 Appellant first complains about his counsel's failure to communicate a plea offer to him. 
A criminal defendant is entitled to effective assistance of counsel during the plea bargaining process. 
Randle v. State, 847 S.W.2d 576, 580 (Tex. Crim. App. 1993) (citing Ex parte Wilson, 724 S.W.2d
72, 73 (Tex. Crim. App. 1987)). A defendant has a right to be fully informed about all plea bargain offers. 
Ex parte Wilson, 724 S.W.2d at 74. The defense attorney has an obligation to fully advise his client of
the terms and desirability of plea offers by the State. Id. 

 At a hearing on appellant's motion for new trial, appellant's counsel testified that the day
of trial, the State made a plea offer of 35 years in prison with the condition that appellant also plead guilty
to two other pending offenses. Appellant's counsel testified that he did not communicate the plea offer to
appellant. Appellant contends that the failure of his attorney to communicate this plea offer deprived him
of his right to make the ultimate decision on his plea. He contends that his attorney's failure to communicate
the offer was conduct that fell below the objective standard of reasonably effective assistance of counsel. 


 The State previously offered appellant a plea of 20 years in prison which appellant rejected.
Appellant did not testify at the hearing on the motion for new trial. Additionally, the record contains no
evidence that appellant would have accepted the 35-year offer and pleaded guilty to the two other pending
offenses had the offer been communicated to him. 

 In satisfying the second prong of Strickland, appellant must have shown "a probability
sufficient to undermine confidence in the outcome." The circumstantial evidence suggests that appellant
would have rejected the plea offer. He had already rejected a plea offer of 20 years. We conclude that
though appellant was not informed of the State's last plea offer, appellant failed to show a reasonable
probability that the result of the proceeding would have been different. 

 Appellant also complains that he was denied effective assistance of counsel because his
attorney failed to investigate potential witnesses. An attorney must seek out and interview potential
witnesses of which he is made aware. See Butler v. State, 716 S.W.2d 494, 499 (Tex. Crim. App.
1986). 

 Appellant's counsel visited with appellant three or four times before trial. Appellant did
not give him any names of witnesses until the day of trial. Additionally, appellant's counsel discovered and
spoke with a possible alibi witness. After speaking with the potential witness, appellant's counsel
concluded that his testimony would not benefit appellant. Appellant presented no evidence at the hearing
on the motion for new trial that there existed any alibi witnesses or any witnesses to appellant's character
that would have benefitted him at trial. Appellant has not shown a reasonable probability that the alleged
failure to investigate witnesses would have affected the outcome of the trial under Strickland. 

 Finally, appellant contends that he was deprived of effective assistance of counsel during
the punishment phase of trial because his attorney failed to investigate potential character witnesses
available to testify that could have provided beneficial testimony. 

 At the motion for new trial, appellant did not give any information about who these
individuals might be and what they would have testified about. Appellant's attorney testified at the motion
for new trial that, given the state of the evidence the State offered about appellant's extensive past criminal
record through the presentence report, it was doubtful, if any beneficial witnesses existed, that they would
have aided appellant. In applying the Duffy standard, we cannot say that this instance constituted
ineffective assistance of counsel.

 After reviewing the totality of appellant's legal representation, we conclude that appellant
has failed to demonstrate that he received ineffective assistance of counsel. The trial court did not abuse
its discretion by overruling appellant's motion for new trial. We overrule appellant's third point of error. 



Conclusion


 We affirm the trial court's judgment.


Before Justices Powers, Jones and Kidd

Affirmed

Filed: August 28, 1997

Do Not Publish



ex. Crim. App
1985). Allegations of ineffectiveness will be sustained only if they are firmly founded in the record. Valdes-Fuerte v. State, 892 S.W.2d 103, 110 (Tex. App.--San Antonio 1994, no pet.). 


Specific Complaints

 Appellant first complains about his counsel's failure to communicate a plea offer to him. 
A criminal defendant is entitled to effective assistance of counsel during the plea bargaining process. 
Randle v. State, 847 S.W.2d 576, 580 (Tex. Crim. App. 1993) (citing Ex parte Wilson, 724 S.W.2d
72, 73 (Tex. Crim. App. 1987)). A defendant has a right to be fully informed about all plea bargain offers. 
Ex parte Wilson, 724 S.W.2d at 74. The defense attorney has an obligation to fully advise his client of
the terms and desirability of plea offers by the State. Id. 

 At a hearing on appellant's motion for new trial, appellant's counsel testified that the day
of trial, the State made a plea offer of 35 years in prison with the condition that appellant also plead guilty
to two other pending offenses. Appellant's counsel testified that he did not communicate the plea offer to
appellant. Appellant contends that the failure of his attorney to communicate this plea offer deprived him
of his right to make the ultimate decision on his plea. He contends that his attorney's failure to communicate
the offer was conduct that fell below the objective standard of reasonably effective assistance of counsel. 


 The State previously offered appellant a plea of 20 years in prison which appellant rejected.
Appellant did not testify at the hearing on the motion for new trial. Additionally, the record contains no
evidence that appellant would have accepted the 35-year offer and pleaded guilty to the two other pending
offenses had the offer been communicated to him. 

 In satisfying the second prong of Strickland, appellant must have shown "a probability
sufficient to undermine confidence in the outcome." The circumstantial evidence suggests that appellant
would have rejected the plea offer. He had already rejected a plea offer of 20 years. We conclude that
though appellant was not informed of the State's last plea offer, appellant failed to show a reasonable
probability that the result of the proceeding would have been different. 

 Appellant also complains that he was denied effective assistance of counsel because his
attorney failed to investigate potential witnesses. An attorney must seek out and interview potential
witnesses of which he is made aware. See Butler v. State, 716 S.W.2d 494, 499 (Tex. Crim. App.
1986). 

 Appellant's counsel visited with appellant three or four times before trial. Appellant did
not give him any names of witnesses until the day of trial. Additionally, appellant's counsel discovered and
spoke with a possible alibi witness. After speaking with the potential witness, appellant's counsel
concluded that his testimony would n