

**NUMBER 13-08-00178-CR**

# COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

### EX PARTE: JUSTIN DEL LLANO

**On appeal from the 94th District Court of Nueces County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Yañez and Benavides
Memorandum Opinion by Justice Benavides**

Appellant, Justin Del Llano, appeals from the trial court's order denying his petition for writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 8 (Vernon 2008). By two issues, Justin argues that he received ineffective assistance of counsel when his counsel advised him to accept a plea bargain and did not challenge the validity of a search warrant that uncovered evidence forming the basis of the prosecution. We affirm.

### I. BACKGROUND

On May 23, 2007, Officer G. Olvera sought a search warrant to search a residence

at 5702 Glen Arbor in Nueces County, Texas. Officer Olvera executed a probable cause affidavit, which stated that the "suspected place is in charge of and controlled by" Justin and his father, Henry Del Llano. At the time the search warrant was issued, Justin was seventeen years old and was living with his parents. The affidavit stated that Officer Olvera believed that Justin was knowingly and intentionally in possession of contraband that had been used to deface property:

> Your affiant has had prior contact with Justin Del Llano and [C.T.] During these contacts it has become apparent that both boys have some connection with the Criminal Street Gang "South Side Bloods." Justin Del Llano has "South Side" tattooed on his for [sic] arms.
>
> On 10-19-06 your affiant entered the boys restroom at King High School and detected a strong odor of permanent marker. On the walls and stalls, written in black permanent marker were "Trubl" and "South Side Blood." Justin Del Llano was seen on surveillance camera entering the restroom with a known associate of his identified as [V.Y.]. [V.Y.] was later identified through emails as the tagger "Trubl."
>
> On 2-4-07 numerous areas of King High School was [sic] vandalized with graffiti. Your affiant reviewed the surveillance camera and observed three subjects walking to areas that were vandalized with graffiti. One subject wearing a grey hooded jacket went to areas that were tagged with "LEAN." The other two wearing black hooded jackets were seen going to areas that were tagged with "South Side Bloods." It was later discovered that the identity of "LEAN" was [J.A.] an associate of Justin Del Llano. A vehicle used during the time of the vandalism fits the description of a vehicle seen at the residence of Justin Del Llano. The vehicle, a gold Nissan Maxima with a missing right rear hub cap TX LP Y30-LYB, came back registered to Annette Del Llano.
>
> On 5-16-07 [C.T.] an associate of Justin Del Llano was arrested for places [sic] weapons prohibited and graffiti. Later that night King High School was vandalized with graffiti. On camera a subject wearing a black hooded jacket was seen spray painting "South Side Blood" on the brick wall of King. It is believed that the act was in retaliation for arresting [C.T.] who is known to have a connection with the criminal street gang "South Side Bloods."

The Honorable Sandra Watts, the presiding judge of the 117th District Court of Nueces County, signed the warrant on May 23, 2007. The object of the warrant was to seize items such as markers and aerosol paints, paraphernalia used to commit graffiti, cameras, film, memory storage, photos and video evidence, and clothing. Officer Olvera executed the warrant the same day it was signed. During his search of Justin's room, Officer Olvera discovered a shotgun with a barrel less than fifteen inches long in Justin's closet.

On June 21, 2007, Justin was indicted for possession of an unlawful firearm. *See* TEX. PENAL CODE ANN. § 46.05(a)(3) (Vernon Supp. 2008) (making possession of a short-barrel firearm a felony). Justin retained an attorney, and on December 13, 2007, he appeared before the trial court and pleaded guilty pursuant to a plea bargain with the State. The court inquired whether Justin pleaded guilty voluntarily, and Justin agreed that he was pleading guilty voluntarily because he was guilty. Justin also informed the trial court that he had reviewed the court's written admonishments with his attorney, that his attorney had explained the provisions, and he understood the provisions.

The State offered into evidence State's Exhibits 1 and 2, which contained the police investigation, Justin's judicial confession, and the plea agreement. Justin did not object to any of this evidence. The State's evidence included Officer Olvera's narrative report, which described the execution of the search warrant. Officer Olvera's narrative indicated that during the execution of the search warrant, he located a sawed-off shotgun in Justin's closet.

Justin's judicial confession and stipulation stated:

3

My attorney has investigated the facts and circumstances surrounding my case, discussed those with me, and advised me of possible defenses. I am satisfied with my attorney's representation. I am pleading guilty to the offense of POSSESSION OF A PROHIBITED WEAPON because I am guilty. My plea is freely, voluntarily, knowingly, and intelligently given.

In exchange for the guilty plea, the State agreed to recommend that the court defer adjudication, place Justin on community supervision for seven years, and assess a fine of $1,500. The trial court accepted the plea, found that there was enough evidence to convict Justin, and adopted the plea agreement. On December 13, 2007, the trial court entered a written order deferring adjudication, placing Justin on community supervision for seven years, and assessing a $1,500 fine. The trial court certified that Justin had no right to appeal the guilty plea. *See* TEX. CODE CRIM. PROC. ANN. art. 44.02 (Vernon 2006).

On February 5, 2008, Justin filed an application for a writ of habeas corpus. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072(a). Justin alleged that he received ineffective assistance of counsel because his trial attorney advised him to accept a plea agreement but failed to investigate and challenge the validity of the search warrant that resulted in the discovery of the prohibited weapon. He argued that the search warrant was not based on probable cause, and had his counsel been effective, he would have advised Justin that there was a chance the weapon could be suppressed. He argued that he would not have pleaded guilty had he known there was any chance that the search warrant was defective.

In support of his application, Justin attached the probable cause affidavit in support of the search warrant, his own affidavit, and an affidavit signed by his father, Henry Jessie Del Llano. Justin's affidavit stated:

I met with my trial attorney on several occasions in preparation for the defense in my case. My case was based on a search warrant issued and

4

executed on May 23, 2007. I understand that the validity of the search warrant was the key element in the defense of my case.

I asked my attorney about the search warrant and he told me that it was "legally sound."

I would not have pleaded guilty, had my attorney told me that there was a chance that the affidavit supporting the warrant was bad and that we might successfully exclude the evidence obtained from the warrant. I relied solely on my attorney's advice in reaching my decision to plead guilty.

Justin's father provided an affidavit making similar assertions:

I met with Justin's trial attorney on several occasions in preparation for Justin's defense. On most occasions the attorney would meet with Justin by himself, but he would talk with me also. I understood that the validity of the search warrant was the key element in the defense of Justin's case and I asked the attorney if the search warrant was good. Justin's lawyer told me that the search warrant was a "sound" warrant.

Justin depended on his attorney's advice in pleading guilty. He also depended on me to assure him that his attorney was giving him good advice. Had I known that there was a chance that the affidavit supporting the warrant was defective and that the evidence might possibly be suppressed, Justin would not have pleaded guilty.

The State filed a response to the application. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 5(b). The State argued that the application should be denied because Justin did not meet his burden to prove that he would have insisted on going to trial but for his counsel's alleged errors and that a motion to suppress would have been granted. The State attached an affidavit from Justin's trial counsel, which stated:

During the ensuing seven months [after the search warrant was executed] I had many meetings with Justin and/or his parents, and prosecutors. After several discussions with intake District Attorney Jack Pulcher, all of Justin's felony charges were reduced to misdemeanors or no billed, except the sawed-off shotgun (possession of prohibited weapon). Numerous meetings with James Gardner, gang prosecutor at the time, made it clear that he didn't want to give Justin any breaks. He believed Justin is a leader of the South Side Bloods street gang, and he was upset that the two

5

felony graffiti charges were dropped. A plea offer for deferred adjudication with Homer Salinas bootcamp as a condition was negotiated.

I discussed Justin's options with him and his parents. We discussed defenses and the plea offer. I explained that because Justin was caught with the contraband in his closet and dresser, the only defense would be a challenge to the search. Our primary objective was to avoid a conviction. It was made clear during plea negotiations that a suppression hearing would result in the plea offer for deferred adjudication being withdrawn. Subsequently, straight deferred adjudication with no bootcamp was negotiated.

. . . .

The assertion in the Del Llano's affidavits that I advised them that I did not believe the search warrant affidavit for probable cause would successfully be challenged is true. I advised them that in my opinion there was enough evidence provided in the affidavit that the reviewing Judge would not overrule Judge Watts' decision to issue the warrant. In my experience, the circumstances presented were not conducive to a favorable ruling. I advised Del Llano that if we challenged the search, the Prosecutor would withdraw the plea offer and he would probably end up with a felony conviction on his record. We talked about a 'mere evidence' warrant and the fact that it had to be issued by a licensed attorney judge. We discussed the probable cause assertions, and I did express my opinion that challenging the warrant would be risky. In my opinion, Justin and his parents understood his options and he decided to take the plea offer for deferred adjudication. By doing so he was aware that he was waiving his right to challenge the search warrant, and his trial rights.

On March 17, 2008, the trial court denied the application for a writ of habeas corpus, finding that the application was frivolous. This appeal ensued.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

By his first issue, Justin argues that he received ineffective assistance of counsel because his trial attorney advised him to accept the plea bargain without investigating and attacking the search warrant. By his second issue, he argues that his prosecution was based on an unlawful search. He argues that because of his counsel's failure to attack the

6

defective search warrant, his guilty plea was not knowingly and voluntarily made.

## A. Standard of Review and Applicable Law

We review a trial judge's decision to grant or deny habeas corpus relief for an abuse of discretion. *Lovill v. State*, Nos. 13-07-00529-CR & 13-07-00668-CR, 2008 WL 5275531, at *10 (Tex. App.–Corpus Christi Dec. 22, 2008, pet. granted); *Ex parte Wilson*, 171 S.W.3d 925, 928 (Tex. App.–Dallas 2005, no pet.). We afford almost total deference to the judge's determination of the historical facts that are supported by the record, particularly when the fact findings are based on an evaluation of credibility and demeanor. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928. We defer to the trial judge's application of the law to the facts, if the resolution of the ultimate questions turns on an evaluation of credibility and demeanor. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928. If the resolution of the ultimate questions turns on an application of the law, we review the determination de novo. *Lovill*, 2008 WL 5275531, at *10; *Ex parte Wilson*, 171 S.W.3d at 928.

An applicant for a writ of habeas corpus claiming ineffective assistance of counsel must demonstrate that (1) his counsel's representation fell below an objective standard of reasonableness; and (2) the defendant suffered prejudice thereby. *Ex Parte McFarland*, 163 S.W.3d 743, 751-52 (Tex. Crim. App. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)). In assessing the first prong, "we look to see if counsel was acting as 'a reasonably competent attorney' would under the circumstances." *Id.* at 753 (quoting *Strickland*, 466 U.S. at 687). The applicant "has the burden of proof and must overcome a 'strong presumption that counsel's performance fell within the wide range of reasonable

7

professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689). The trial counsel's errors must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

The applicant must also prove that counsel's deficient performance prejudiced his defense—he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" means a "probability sufficient to undermine confidence in the outcome." *Id.*

A record indicating that the trial court properly admonished the defendant about a guilty plea presents a prima facie showing that the guilty plea was made voluntarily and knowingly. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998). Under these circumstances, the burden shifts to the defendant to show that he entered the plea without understanding the consequences. *Id.*; *Arreola v. State*, 207 S.W.3d 387, 391 (Tex. App.–Houston [1st Dist.] 2006, no pet.). "An accused who attests when he enters his plea of guilty that he understands the nature of his plea and that it is voluntary has a heavy burden on appeal to show that his plea was involuntary." *Arreola*, 207 S.W.3d at 391.

A guilty plea is not voluntary if made as a result of ineffective assistance of counsel. *Ex parte Burns*, 601 S.W.2d 370, 372 (Tex. Crim. App. 1980). When a defendant challenges the voluntariness of a plea entered upon the advice of counsel, and contends that his counsel was ineffective, "the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going to trial." *Ex parte Moody*, 991 S.W.2d 856, 857-58 (Tex. Crim. App. 1999) (quoting *Ex Parte Morrow*, 952 S.W.2d 530, 536 (Tex. Crim. App. 1997)).

## B.    Investigation of the Facts

First, Justin argues that his trial counsel failed to conduct a full investigation of the facts of the case. When an ineffective assistance claim involves an allegation that defense counsel failed to investigate the case, the applicant has the burden to show that a further investigation would have led to specific evidence or witnesses that were available and would have benefitted the defense. *See Wilkerson v. State,* 726 S.W.2d 542, 551 (Tex. Crim. App. 1986); *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983) (holding that, to show ineffective assistance of counsel because of failure to call witnesses, defendant must show that witnesses were available and that he would have benefitted from their testimony); *Wilson v. State*, 688 S.W.2d 212, 214 (Tex. App.–Corpus Christi 1985, no pet.).

Justin does not argue that his attorney failed to interview witnesses or to properly review the prosecutor's file. *See, e.g., Haynes v. State*, 790 S.W.2d 824, 827 (Tex. App.–Austin 1990, no pet.). In fact, Justin does not point to any evidence that a further investigation would have revealed and that would have resulted in a stronger challenge to the probable cause affidavit. *See Wilson*, 688 S.W.2d at 214; *see also Wilkerson,* 726 S.W.2d at 551; *King*, 649 S.W.2d at 44. Instead, Justin's arguments focus on the affidavit itself as being insufficient on its face. Without any additional support, we cannot conclude that Justin's trial counsel failed to investigate the facts underlying the probable cause

9

affidavit. *See Ex Parte Cruz*, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987) (holding record insufficient to justify finding that attorney failed to properly investigate case), *overruled on other grounds*, *Hernandez v. State*, 988 S.W.2d 770 (Tex. Crim. App. 1999); *King,* 649 S.W.2d at 44. Thus, we reject Justin's argument in this regard.

## C.      Review of the Affidavit

Second, Justin argues that the probable cause affidavit, on its face, demonstrates that the warrant was not supported by probable cause, and his trial counsel was defective by advising him that the warrant was "sound." He argues that, had his counsel advised him there was an opportunity to challenge the probable cause affidavit and a "chance" that the firearm could be excluded at trial, he would have insisted on going to trial and would not have pleaded guilty.

In contrast, Justin's trial counsel maintains that he advised Justin that, in his experience, he believed that a challenge to the warrant would probably not succeed and that such a challenge would be "risky." Justin's trial counsel provided an explanation for the basis of his advice to Justin that he plead guilty to the charge: counsel explained that the goal of the representation, as dictated by Justin and his family, was to avoid a felony conviction. Counsel further explained that the State informed him that it would withdraw the plea offer if Justin filed a motion to suppress the fruits of the search. Thus, he advised Justin that challenging the warrant could result in a criminal conviction on his record—which Justin wanted to avoid.

The trial court admonished Justin of the consequences of his plea, and Justin represented to the trial court that he understood the plea, that counsel had investigated the

10

case and explained the possible defenses, and that he was satisfied with his counsel's advice and representation. Under these circumstances, Justin bore a heavy burden to establish that his plea was involuntary. *See Martinez*, 981 S.W.2d at 197; *Arreola*, 207 S.W.3d at 391. When faced with conflicting evidence about the circumstances affecting the representation and the voluntariness of the plea, the trial court was required to resolve the conflict. *See* TEX. CODE CRIM. PROC. ANN. art. 11.072 § 6(b) ("In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection."); *Hall v. State*, 160 S.W.3d 24, 40 (Tex. Crim. App. 2004) (holding that the "trial judge, who presided over the trial and the habeas proceedings, was in the best position to evaluate the conflicting evidence"); *see also Ex parte Karlson*, 282 S.W.3d 118, 129-30 (Tex. App.–Fort Worth 2009, pet. ref'd).

As is apparent from the above recitation, Justin's trial counsel did not advise him that there was no possibility of a challenge to the warrant, but that it would be "risky." Justin's trial counsel opined that Justin was aware of the options available and that he decided to plead guilty voluntarily—all to achieve the goal of avoiding a conviction. And Justin has thus far avoided a conviction—he received deferred adjudication. The trial court was entitled to believe trial counsel's recitation of the facts and to conclude that Justin pleaded guilty voluntarily. *See Mitich v. State*, 47 S.W.3d 137, 141 (Tex. App.–Corpus Christi 2001, no pet.) (holding that, where defendant informed trial court that he had discussed plea and possible defenses with counsel, understood consequences of plea, and was satisfied with counsel's representation, there was no evidence that advice of counsel caused involuntary plea); *see also Jackson v. State*, No. 2-02-217-CR, 2003 WL

11

21983258, at *2 (Tex. App.–Fort Worth Aug. 21, 2003, no pet.) (mem. op.; not designated for publication) (holding that counsel was not ineffective in failing to communicate plea bargain offer by State where plea bargain would not satisfy goal of representation, which was to avoid deportation).[1]  We overrule Justin's issues.

### III. CONCLUSION

Having overruled all of Justin's issues, we affirm the trial court's order denying his application for a writ of habeas corpus.

GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Memorandum Opinion delivered and
filed this the 13th day of August, 2009.

---

[1] Justin argues that a challenge to the warrant would have been successful.  In response, the State challenges these arguments and also argues that Justin did not establish that he had standing to challenge the warrant.  We need not address these issues.  See TEX. R. APP. P. 47.1.